FIRST CITIZENS BANK & TRUST COMPANY v. C. DOUGLAS HOLLAND AND CHRISTINE P. HOLLAND

No. 8010SC785

(Filed 21 April 1981)

**Bills and Notes § 19– action on promissory note – defenses – summary judgment improper**

In an action to recover on two promissory notes executed by defendant and made payable to plaintiff, the trial court erred in entering summary judgment for plaintiff where defendant alleged in his answer, deposition, and affidavit matters which tended to show that defendant, a CPA, became acquainted with and had business dealings with an officer of plaintiff; defendant signed the notes in question because the officer told him that he needed to sign them in order to help the officer, defendant, and plaintiff; defendant's affidavit indicated that some of the reasons he was told for having him sign the notes were that "the bank needed to clear its records" and that the officer with whom defendant dealt "had embezzled the money and that it would benefit him and [defendant] in the FBI felony investigation"; defendant never received either of the notes in question and he thought the notes were made payable to plaintiff's officer with whom he had dealt; and the notes, together with a determination of the relationship between the officer with whom defendant dealt and plaintiff with respect to the notes, would enable the court to determine whether the notes sued upon were executed and delivered illegally, under duress, through fraud, or without consideration.

APPEAL by defendant C. Douglas Holland from *Britt, Judge.* Judgment entered 30 April 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 5 March 1981.

This is a civil action wherein plaintiff seeks to recover on two promissory notes in the amounts of $41,300 and $24,070 respectively which were executed by defendant Douglas Holland and made payable to plaintiff. Plaintiff also seeks to recover on these notes under a guaranty agreement executed by defendant Christine Holland.

Defendants filed answer, admitting the execution and delivery of the notes to plaintiff, but alleging certain defenses which will be hereinafter discussed. Plaintiff filed a motion for summary judgment, supporting its motion with the affidavit of Dolph U. Kemp, Vice President in the Installment Loan Division of plaintiff, as to the execution of the notes. In opposition to the motion, defendants offered the deposition of defendant Douglas Holland, along with an affidavit, both of which will be discussed in more detail at a later point. From summary judgment in favor of plaintiff on both notes against defendant Douglas Holland, defendant Douglas Holland appealed.

*Ward & Smith, by Thomas E. Harris and Kenneth R. Wooten, for the plaintiff appellee.*

*Boyce, Mitchell, Burns & Smith, by G. Eugene Boyce and James M. Day, for the defendant appellant.*

HEDRICK, Judge.

Defendant Douglas Holland (hereinafter "defendant") assigns error to the court's entry of summary judgment in favor of plaintiff.

Summary judgment must be granted, upon motion, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. § 1A-1, Rule 56(c). Furthermore, when the movant, as here, is the party with the burden of proof, summary judgment may be granted in his favor on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) where the opposing party has failed to introduce any materials in his

favor, failed to point to specific areas of impeachment and contradiction, and failed to use G.S. § 1A-1, Rule 56(f); and (3) when summary judgment is otherwise appropriate. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

We note at the outset that only latent doubts have been raised as to the credibility of plaintiff's affiant, Dolph Kemp. Kemp's affidavit refers to matters which have been admitted by defendant, and contains nothing which would raise any question as to his credibility. We thus proceed to determine whether the other requirements of *Kidd v. Early, supra*, have been met in this case.

In his answer to plaintiff's claims on the two promissory notes defendant alleged, *inter alia*, (1) "want of consideration" with respect to the notes; (2) the execution of the notes was "induced by trickery, fraud, and undue influence," in that plaintiff's agents made false, material and deceiving representations to defendant that he had to sign the notes in order to "get the bank's records straight," to "'satisfy' state and federal bank officials," and to alter the results of "an impending federal investigation" of plaintiff, and also because defendant "might be criminally prosecuted;" (3) the notes were obtained for the "illegal purpose" of giving a "false representation" of plaintiff's financial condition "with respect to substantial losses sustained by reason of employee defalcations" in order to "suppress and conceal criminal offenses and violations of banking regulations" by plaintiff and its employees; (4) the notes were "given in contravention of public policy ... to repay moneys embezzled by persons other than" defendant so as to "conceal from the public the circumstances of said embezzlement ...;" and (5) the notes were obtained not only under "threats and intimations of prosecution" but also upon promises that execution "would suppress or tend to suppress prosecution and criminal punishment" of defendant and that execution would "mitigate" the punishment of plaintiff's employees and agents.

Defendant cannot, of course, merely depend upon his pleadings to successfully oppose plaintiff's motion for summary judgment. Once a motion for summary judgment has been made and supported as provided by G.S. § 1A-1, Rule 56, the opposing party may not rest upon the mere allegations and denials of his pleadings, but must come forth, by affidavits or as otherwise

provided in Rule 56, with specific facts showing that a genuine issue for trial exists. G.S. § 1A-1, Rule 56(e); *Econo-Travel Motor Hotel Corp. v. Taylor*, 301 N.C. 200, 271 S.E. 2d 54 (1980). In the case *sub judice*, defendant did not rely solely on his pleadings, but opposed plaintiff's motion for summary judgment with his deposition testimony, which tends to show the following:

Defendant, a certified public accountant (CPA), became acquainted with Sam Hudson, an officer of plaintiff, sometime before 1970 through the church to which both men belonged. During either 1968 or 1969, Hudson helped defendant in establishing a business relationship with plaintiff for the purpose of obtaining short-term working capital loans for defendant's business. Hudson also helped defendant get several automobile loans from plaintiff.

Around 1973, defendant also began a course of dealing with Hudson on a personal basis. Hudson and defendant entered into a series of transactions with a third party, Larry Woodhouse, by which defendant would act as a "conduit" for funds flowing from Hudson to Woodhouse for use in certain businesses run by Woodhouse. These transactions typically worked as follows: In exchange for a promissory note executed by defendant, Hudson would deliver funds to defendant's CPA account with plaintiff by cashier's check drawn on plaintiff's Installment Loan Department. Defendant never read the promissory notes he was signing, since he trusted Hudson and Hudson represented that the notes were made payable to Hudson. Defendant would then take the funds and "lend" them to Woodhouse, usually on a short term basis. On one occasion, defendant collected a $5,000 "fee" for Hudson from Woodhouse, in accordance with the "specified fee" of ten percent charged to Woodhouse for the use of the funds.

As part of these transactions, defendant executed two promissory notes, in the amounts of $35,000 and $40,000 respectively, both of which defendant presumed were payable to Hudson. Defendant never saw these notes after he executed them. With respect to the $35,000 note, defendant took the funds delivered by Hudson in exchange for the note, and delivered them to Woodhouse. Woodhouse "repaid" the funds to defendant several times, but defendant would subsequently "re-lend" the funds again, until the money was delivered to Woodhouse a final

time and never repaid. The $40,000 note was executed sometime after the $35,000 note, and following the delivery of these funds to Woodhouse, defendant received a notice from plaintiff that he owed the bank on a $40,000 note. Defendant was quite surprised at this, since he believed that he had personally obligated himself to Hudson, not the bank, for the $40,000. Defendant called Hudson to find out what was going on, and Hudson told defendant that there had been "a lot of tightening up on loans and things within the Bank, and that he had to put this in. . . ."

Thereafter, defendant had several meetings with officials of plaintiff. The officials sought to have defendant sign a new note to replace the $40,000 note, and when defendant informed the officials as to the $35,000 note, the officials sought to have defendant sign a new note to replace that obligation as well. Hudson had told defendant that defendant needed to sign the new notes in order to help Hudson, defendant, and plaintiff. Defendant asked one of the officials, a Mr. McClain, if it would indeed help everybody if defendant signed the notes, to which McClain replied, "Yes." Defendant knew that at that time the FBI was conducting an investigation into Hudson's dealings as an official of plaintiff. Defendant was told "that the Bank is looking into all these deals and that they were looking into him." Nevertheless, because plaintiff and defendant had had a "tremendous relationship" up to that time, and defendant was interested in maintaining that relationship due to the number of clients he had who used plaintiff's services, defendant "got the impression that they would still allow me to remain as a customer and work with them, and such as that, if I would kind of go along with this, because that would help the situation."

Since defendant "knew that some money had gone through me and that it wasn't all repaid, and that it would help the people involved if I'd say it was mine," defendant then executed the two new notes, on 25 October 1976 and 22 November 1976 respectively, which are the subject of this lawsuit. The proceeds of the 25 October 1976 note, in the amount of $41,300, were to be used to "pay down" the outstanding balance on the $35,000 note ($35,000 principal plus $6,300 accumulated interest). The proceeds of the 22 November 1976 note, in the amount of $24,070, were to be used to "pay down" the outstanding balance on the $40,000 note which remained after defendant made a partial payment of about $25,000. Defendant never saw the original

$35,000 and $40,000 notes during the course of the meetings with the officials of plaintiff, and those notes were never delivered to him as "paid" after the proceeds of the $41,300 and $24,070 notes were presumably used to pay off the old notes.

Defendant expected that the new notes would be used "for whatever purpose they need to get that FBI man off their back." Defendant did not think it unusual that he had to pledge collateral for the new notes, since "that would look better to the people who were examining [the notes]." After the execution of the new notes, defendant was unable to get the funds owed him by Woodhouse, and plaintiff made only one effort to get Woodhouse to pay on the obligations. Defendant never expected plaintiff to demand payment on the new notes, so he never made any payments on them.

Defendant also opposed plaintiff's motion for summary judgment with an affidavit signed by defendant which supported the facts presented in his deposition. The affidavit indicated that "some of the reasons" which defendant was told for having him sign the new notes were that "the bank needed to clear its records" and that "Mr. Hudson had embezzled the money and that it would benefit him and [defendant] in the FBI's felony investigation." The affidavit also stated that defendant was acting as an agent for Woodhouse, a fully disclosed principal known to plaintiff and its agent, Hudson, such that defendant had no liability on the notes.

In our opinion, defendant has not "failed to introduce any materials in his favor." The materials he introduced, the deposition and the affidavit, raise a genuine issue of fact as to the relationship between Hudson and plaintiff with respect to the $35,000 and $40,000 notes, which were allegedly paid off with the proceeds of the notes sued upon. We think it particularly significant that defendant testified that he never received either the $35,000 note or the $40,000 note, and that he thought those notes were made payable to Hudson. These notes (the $35,000 and $40,000 notes), together with the determination of the relationship between Hudson and plaintiff with respect to these notes, would enable the court to determine whether the notes sued upon were executed and delivered illegally, under duress, through fraud, or without consideration.

We note that plaintiff has argued that it is the holder of two

negotiable instruments as evidenced by the $41,300 and $24,070 notes, but we find this to be of no consequence. Even assuming that plaintiff could achieve the most protected status of holder in due course under G.S. § 25-3-302, plaintiff could not take free of any of the defenses raised by defendant's materials, and thus could not defeat such defenses as a matter of law, since plaintiff dealt with defendant in the execution of the notes. G.S. § 25-3-305(2).

Because defendant has introduced materials in his favor complying with the dictates of Rule 56(e) and *Kidd v. Early, supra*, and because his deposition testimony and affidavit raise a genuine issue of material fact as to the relationship of Hudson to plaintiff with respect to the $35,000 and $40,000 notes, summary judgment for plaintiff was not appropriate in this case.

Reversed and remanded.

Judges WEBB and HILL concur.