## J. L. BURRISS v. A. L. STARR.

(Filed 20 May, 1914.)

**1. Statute of Frauds—Contracts to Convey—Written Promise—Bills and Notes.**

It is not required by the statute of frauds that the writing necessary to enforce an agreement for the conveyance of lands should be "subscribed" by the owner; but it is necessary that it should contain a promise of some sort by the owner to make the conveyance upon the payment by the purchaser of the consideration agreed upon (Revisal, sec. 976); therefore the acceptance by the owner of a promissory note given by the purchaser, and stated to be for the amount of the purchase price of lands, will not alone be a sufficient compliance with the statute; and there being no valid contract, it follows that damages may not be recovered for a breach thereof.

**2. Contracts Under Seal—Consideration Implied.**

A compromise of a controverted matter is a sufficient consideration to uphold an agreement, and especially is this true when the party seeking to avoid it receives a substantial benefit thereunder, as in this case, having a cloud upon his title to lands removed; and where a note under seal has been received by him from the other party, under a compromise agreement, the seal itself imports an enforcible consideration, and the note will not be declared invalid for a want thereof.

APPEAL by defendant from *Cline, J.,* at November Term, 1913, of CATAWBA.

This action was brought by plaintiff for the specific performance of a contract, which he says was made by the defendant, to convey to him for $600 a tract of land known as the dower of Mrs. Starr. The only written evidence of the contract offered by the plaintiff was parol proof of the contents of a note, which had been lost, given in 1909 by him to the defendant for the land, and payable in annual installments, with interest from 1 January, 1910. The note was prepared by the defendant at his home and sent to the plaintiff, who signed it and returned it to defendant. Plaintiff testified that they were negotiating for a settlement of the matter, and he told defendant that, while he preferred to have the land, if defendant

165—42

would give him $400 and pay back the amount, $130, which he had paid on the note, that he would let him have the land. Defendant declined this proposal, and offered to pay plaintiff $200 and the $130 he had paid on the note, with interest. They parleyed about the matter and finally agreed upon a settlement, by which defendant agreed to give plaintiff his note for $200 and pay the $130 with interest in cash. The note was given for the $200, dated 11 January, 1913, and payable 1 November, 1913, with interest at 6 per cent until paid; but the $130, with interest, was not then paid. Plaintiff stated two causes of action in his complaint: one for the breach of the contract to convey and damages, and the other for specific performance of the contract. He proposed to testify, in his own behalf, that he was induced to settle with defendant by reason of the latter's statement, at the time, that he (defendant) could hold the land, defendant being a lawyer. This was excluded.

At the close of the evidence, defendant moved the court for judgment of nonsuit, under the statute, as to the first cause of action, and afterwards moved for a similar judgment as to the second cause of action.

The following entry appears in the record, with respect to these motions: "When these motions were made and ruled upon as appears above, the court intimated, or rather stated, to counsel in open court, that no issue as to specific performance would be submitted to the jury, the court being of the opinion, as a matter of law, that in any view of the evidence the plaintiff is not entitled to a specific performance as sought for in his complaint. The court also stated that no issue would be submitted to the jury upon any question of damage arising out of the failure, as alleged, upon the part of the defendant to carry out the contract alleged in the complaint."

The court charged the jury as follows: "If you believe all the evidence in this case, plaintiff is entitled to recover $130, with interest thereon from 1910, and the further sum of $200 on the note bearing date of 11 January, 1913, with interest thereon."

The jury returned the following verdict:

1. Is the defendant indebted to the plaintiff on account of any payment made by plaintiff to defendant on the $600 note mentioned in the third paragraph of the plaintiff's complaint; and if so, in what amount?   Answer: Yes; $130, with interest from 1 January, 1911.

2. Is the defendant indebted to the plaintiff on account of the $200 note referred to in the answer and the replication; and if so, in what amount?   Answer: Yes; $200, with interest from date given.

Judgment was entered upon the verdict, and both parties appealed.

*George McCorkle, W. A. Self, and R. R. Moose for plaintiff.*
*A. A. Whitener for defendant.*

### PLAINTIFF'S APPEAL.

WALKER, J., after stating the case: The rulings and judgment of the court were, in our opinion, clearly right.   The plaintiff had no contract for the conveyance of the land to him which was binding in law upon the defendant.   He had only a note of the defendant for the payment of $600, but no promise by the latter to convey the land to him.   It was contended by plaintiff's counsel that defendant wrote the note, and as his name, in his own handwriting, appears in it, this is a sufficient signing of the writing within the meaning of the statute of frauds to bind him to convey the land, and in support of this proposition he cited *Hall v. Misenheimer,* 137 N. C., 183.   That case did not so decide.   We expressly held that the writing must contain a contract to convey the land, and when this appears, the place of signing is immaterial, if it evinces a purpose of the signer to adopt the contract as his.   It was there said, it is true, that the memorandum or writing is not required by our statute to be *subscribed,* and therefore the place of the signature is not material.   "In regard to the place of the signature," says Mr. Browne, "there is no restriction.   It may be at the top, or in the body, of the memorandum, as well as at the foot."   Browne on the Statute of Frauds (5 Ed.), sec. 357.   But the

---

---

name, he further says, besides being in the handwriting of the party to be charged, must always be inserted in such a manner as to authenticate the instrument as his act, or, in other words, to show the intention of the party to admit his liability upon the contract. Browne, *supra.*

In *Hall v. Misenheimer* we discussed the question as to the proper place for the signature, because the point was raised, but it was only a preliminary to the statement of the vital question, that even if there was a sufficient signing, there was no contract to sign.

In *Boger v. Lumber Co., ante, 557, Justice Allen,* for the Court, says: "The authorities make a distinction between statutes requiring instruments to be signed and those requiring them to be subscribed, holding with practical unanimity, in reference to the first class, that it is not necessary for the name to appear on any particular part of the instrument, if written with the intent to become bound; and, as to the second class, that the name must be at the end of the instrument. In *Richards v. Lumber Co.,* 158 N. C., 56, dealing with this question, the Court said: 'It is well settled in this State that when a signature is essential to the validity of an instrument, it is not necessary that the signature appear at the end, unless the statute uses the word "subscribe." *Devereux v. McMahon,* 108 N. C., 134. This has always been ruled in this State in regard to wills, as to which the signature may appear anywhere. If this is true of a "signature," it must also be true of the word "countersign." It has been often held that the place of signing is a matter of taste. *Adams v. Field,* 21 Vermont, 264; 36 Cyc., 441.' "

And so we held in *Hall v. Misenheimer, supra.* It was there held that the signature had its proper place in the paper, but the contents of the letter lacked promissory or contractual words to which the signature could attach itself, so as to form a valid agreement on his (vendee's) part, under the statute, to pay the purchase money. We there said: "The name of the vendee was inserted in the paper by his own direction, and it cannot be questioned that he fully intended thereby to bind himself by the

receipt as evidence of a contract to buy the land, so far as a signing of the writing was necessary for that purpose. *Cherry v. Long,* 61 N. C., 466, seems to be directly in point. It was not contended that the defendant was not bound by what his agent did in writing the receipt, though the latter's authority was given by parol. *Neaves v. Mining Co.,* 90 N. C., 412, 47 Am. Rep., 529. But we think there is a serious obstacle in the way of plaintiff's recovery. The statute expressly requires a contract to sell land, or some note or memorandum thereof, to be put in writing and signed by the party to be charged therewith or by his lawfully authorized agent. The Code, sec. 1554. In order, therefore, to charge a party upon such a contract, it must appear that there is a writing containing, expressly or by implication, all the material terms of the alleged agreement, which has been signed by the party to be charged, or by his agent lawfully authorized thereto."

A signature to a paper imposes no obligation unless there is in it language sufficient for that purpose, and where there is such language, the signature of the party binds him, though it is not subscribed to the instrument, but appears in some other part of it, if the intention is that it should be his contract.

It must be remembered that the requirement of the statute is, not that the party shall sign a written memorandum merely, but that all contracts to sell or convey any lands, or any interest in or concerning them, shall be void, "unless said *contract* or some memorandum or note *thereof* be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." Revisal, sec. 976 (italics ours). It is, therefore, a contract to sell or convey the land that should be in the memorandum or writing to be signed. There is no such contract here. The note of the defendant, although written by the plaintiff, contained only a promise on his part to pay the money, but no reciprocal promise of the defendant to convey the land, that is, the dower tract. The court was, therefore, right in holding that plaintiff was not entitled to specific performance of any contract to convey land, nor to damages for a breach thereof, and for the simple reason that there

was no such contract. The other exceptions of plaintiff become immaterial, and we understand that he has no objection to the judgment, if he has no cause of action upon the contract for specific performance or damages.

In this appeal, therefore, no error appears.

No error.

#### DEFENDANT'S APPEAL.

WALKER, J. The defendant's exceptions, save one or two of them, have been decided favorably to him in the plaintiff's appeal. He makes no objection to the judgment for the $130 and interest, but contends, and prayed the court to. so instruct the jury, that the note under seal for $200, given by him to the plaintiff in settlement of their differences, was without consideration. But a bond does not require a consideration, as the seal imports one. It was so held in *Harrell v. Watson,* 63 N. C., 454, where the same defense was pleaded to an action upon a sealed note. In that case it was said by *Chief Justice Pearson:* "He (defendant) says the bond is void for want of a consideration. The reply is: A bond needs no consideration. The solemn act of sealing and delivering is a *deed, a thing* done, which, by the rule of the common law, has full force and effect without any consideration. *Nudum pactum* applies only to simple contracts; deeds need no consideration, except such as take effect under the doctrine of uses, or such as are made void by the statutes of Elizabeth as against creditors and purchasers for valuable consideration, but are valid, as at common law, between the parties."

Besides, it appears that the parties in good faith came to a settlement of their dispute as to their rights. Plaintiff thought he had a "bond for title," but could not find it. The death of the widow had made the "dower tract," as it was called, more valuable, and defendant wished to settle the matter, and made the first offer to do so. The settlement was a distinct advantage to defendant, as it removed an apparent cloud from his title.

In *Mayo v. Gardner,* 49 N. C., 359, this Court said, by *Chief Justice Nash:* "*In re Lucy,* 21 Eng. Law and Eq., 199, it was

decided that, to sustain a compromise, it was sufficient if the parties thought, at the time of entering into it, that there was a *bona fide* (or real) question between them, though in fact there was no such question." The law favors the settlement of disputes, as was said in that case. It is stated in 9 Cyc., 345, that "the compromise of a disputed claim may uphold a promise, although the demand was unfounded," citing numerous cases in the notes to sustain the text.

The settlement between the parties was also a bar to plaintiff's recovery in this action, of which the defendant has had the benefit. He avers in his answer that it was fair and free from any fraud or mistake, and made voluntarily by the parties and for their mutual benefit, and it should be binding and conclusive as to both of them. It, therefore, formed a good consideration for the note, if it required one, being under seal. Clark on Contracts (2 Ed.), 132.

No error.