**W. H. WYNNE, Jr.**

v.

**ALUMINUM AWNING PRODUCTS COMPANY.**

**Civ. A. No. 373.**

United States District Court
M. D. North Carolina,
Winston Salem Division.

June 23, 1952.

ties on a patent licensing agreement and to restrain defendant from using its trademark "Koolvent".

The license agreement was entered into August 24, 1946, for a term ending October 23, 1949, in consideration of $3,500 plus a royalty of five per cent of gross sales, and granting the exclusive right to manufacture and sell Ventilated Metal Awnings under Houseman Patent No. 2098705 and Re-Issue No. 20975, issued January 10, 1939, in designated counties in North Carolina. The agreement contains no warranty of the validity of the patent nor agreement to reimburse licensee if it is not permitted to sell the patented article on account of infringement of older patent.

The plaintiff organized Koolvent Metal Awning Company, Inc., a corporation in Georgia in which he was principal stockholder and licensed it in the same way to sell in designated territory. Matthews and Graham sued Koolvent Metal Awning Co., Inc., for infringement of A. T. Matthews Re-Issue Patent No. 21,053. The district court held the Matthews Patent valid but not infringed. When plaintiff licensed the defendant he represented that he had won the case. But on Nov. 23, 1946, the 5th Circuit Court of Appeals, Matthews v. Koolvent Metal Awning Co., 158 F.2d 37, reversed the district court, 60 F.Supp. 3, and held the Matthews patent valid and senior to Houseman and infringed by the Koolvent Awning of the type contemplated in the license agreement.

The defendant without knowledge of the Circuit Court ruling left Atlanta December 31, 1946, to set up the plant at Winston Salem.

On April 14, 1947, plaintiff entered into a contract with those holding Matthews Patent recognizing that the Koolvent Awning infringed the Matthews Patent and obtained a license under the Matthews Patent, and agreed not to contest thereafter the validity of the Matthews Patent "or to aid, encourage or assist others to do so". This

Ratcliff, Vaughn, Hudson, Ferrell & Carter, Winston Salem, N.C., Lawrence H. Cohn, St. Louis, Mo., Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., for plaintiff.

Deal, Hutchins & Minor, Winston Salem, N. C., for defendant.

HAYES, District Judge.

The plaintiff sued the defendant to recover a balance of $2,071.34 on royal-

fact was not disclosed to the defendant herein.

On April 22, 1947, defendant received a notice from the attorneys for the Matthews interest giving notice of infringement and a demand for damages on the basis of the Circuit Court opinion in the case against Koolvent Metal Awning Company, Inc., of Atlanta.

On April 26, 1947, plaintiff wrote defendant: "You will probably receive a letter from the law firm of Ely and Frye, concerning the patent litigation. While their letter will ask for a reply, it is the advice of my attorneys that no reply be written." In the last paragraph the letter states: "Meantime, negotiations are in process to work out the problem." No reference was made to the contract which plaintiff had already made with Matthews on April 14, 1947.

On November 28, 1947, plaintiff wrote defendant that the terms demanded by Matthews were unreasonable although he had tried to get a better offer. He suggests four courses of action but really recommends No. 2 which is to go along with jammed lugs and wait for decision in the Cleveland suit and if this course is pursued to keep an account of business lost by using nothing but jammed lugs."

Then in the latter part of January, 1948, plaintiff met in Salisbury, N. C., with defendant and Allen who was licensee of plaintiff in the Charlotte area. Plaintiff also conferred with Williams in Salisbury who was licensee under the Matthews Patent for both territories. Plaintiff could not complete satisfactory arrangements with Williams. At this meeting it was finally agreed between plaintiff and this defendant that if defendant preferred to fight out the litigation and lost then plaintiff would credit royalties with the expense and damages the defendant expended on account of infringing the Matthews Patent.

Since plaintiff contends there was no consideration to support this agreement, it suffices to say that plain-tiff had sold defendant licensee rights to make a specific awning called Koolvent. It consisted of a series of metal U shaped seats stationed apart and arranged in two layers; the upper layer lapping over the upturned lower layer in such a manner as to carry water off of the roof, yet permit light and air to diffuse under the awning. Defendant quit making this type in August, 1947, to avoid infringement of the Matthews Patent and began making the jammed lug construction which both plaintiff and defendant believed would avoid infringement. The Matthews Patent derived its patentability or novelty because it avoided the accumulation of hot air under the awning by means of the vents and also permitted light to be diffused under the awning rather than cutting off all light which occurred with the conventional awning. There can be no doubt about the very great advantages of the Koolvent Awning over the jammed lug construction. Plaintiff anticipated a loss of business with the jammed lug but thought it would not be as much in dollars as the royalty demanded by Matthews. For this reason, plaintiff was anxious to know if the jammed lug type would not infringe Matthews, and to this end confidently awaited the outcome in the case at Cleveland, Ohio, and of course was vitally interested in the decision of this case in the Fourth Circuit. Plaintiff was restrained in the Georgia case from contesting the Matthews Patent or aiding others in contesting it. Consequently if the Matthews Patent could be defeated in the 4th Circuit it would be advantageous to plaintiff. He concluded that he would not be in contempt if he did not furnish money in defense of this case but that he could allow defendant offset against royalties to the extent of its loss under an unfavorable decision. Therefore the agreement to forego royalties to the extent of loss to Matthews had ample consideration to support it. Although plaintiff at that time agreed to share nearly 50% of the extra cost if defendant would take a license from Matthews,

defendant elected and agreed to conduct the case through the Circuit Court of Appeals.

■ Matthews won final judgment against defendant for $6,271.54 and defendant expended $1169.33 attorney fees, a total of $7,440.87. The gross sales under the license was $101,350 and a royalty of 5% amounted to $5,067.50 of which defendant paid $2,996.16. The total royalties were less than the cost of litigation. However, defendant waived any claim to a refund of the $3,500 paid for the franchise by accepting the agreement to fight the case out and to credit expense and loss against the royalties only. The compromise agreement was made in North Carolina and is valid under the law of this state. Fisher v. John L. Roper Lumber Co., 183 N.C. 485, 111 S.E. 857, 35 A.L.R. 1417; Burriss v. Starr, 165 N.C. 657, 81 S.E. 929.

■ A licensee is released from the payment of royalties when the patent is invalidated or upon a serious narrowing of the claims. Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 63 F.2d 853.

■ The Houseman patent for the device which plaintiff sold a license to defendant was held invalid and an infringement of the Matthews Patent on November 23, 1946, by the Circuit Court of Appeals in the Fifth Circuit. Matthews v. Koolvent Metal Awning Co., 158 F.2d 37. This was a court of competent jurisdiction and constituted an eviction of defendant under its license and thereby released him from paying any royalties. The Fourth Circuit Court of Appeals in Matthews v. Koolvent Metal Awning Co., 182 F.2d 824 held that the jammed lug construction also infringed the Matthews Patent. Pursuant to this decision this defendant was compelled to pay royalties to Matthews. Under all of the facts and the law, the plaintiff is not entitled to any royalty and the defendant is entitled to recover what it has paid.