HOMER BUFFALOE v. PATRICIA HART AND LOWELL THOMAS HART

No. 939SC430

(Filed 15 March 1994)

**1. Sales § 4 (NCI4th)— oral contract—check without defendant's signature—contract unenforceable**

Because the requirement of N.C.G.S. § 25-2-201(1) that the writing be signed by the party against whom enforcement

is sought or by his authorized agent or broker was absent from a check written by plaintiff to defendant as partial payment for bulk tobacco barns, the alleged oral contract between plaintiff and defendants was unenforceable under that statute.

**Am Jur 2d, Sales §§ 180 et seq.**

2. **Sales § 54 (NCI4th) — purchase of tobacco barns — sufficiency of evidence of existence of contract**

In an action for breach of contract, evidence that plaintiff told several people about purchasing tobacco barns from defendants, reimbursed defendants for insurance on the barns, paid for improvements, took possession, enlisted the aid of an auctioneer and the newspaper to sell the barns, received deposits from three buyers, and delivered a $5,000 partial payment check to defendants which was not returned for four days was sufficient to support the jury's conclusion that there was a contract between the parties, that plaintiff accepted the tobacco barns under the terms and conditions of the contract and that defendants accepted a payment for the barns under the terms and conditions of the contract. N.C.G.S. § 25-2-201(3).

**Am Jur 2d, Sales §§ 623 et seq.**

Appeal by defendants from judgments entered 1 October 1992 and 15 December 1992 in Franklin County Superior Court by Judge Henry W. Hight, Jr. Heard in the Court of Appeals 4 February 1994.

*Davis, Sturges & Tomlinson, by Charles M. Davis, for plaintiff-appellee.*

*Norman & Gardner, by Larry E. Norman, for defendant-appellants.*

GREENE, Judge.

Patricia Hart and Lowell Thomas Hart (defendants) appeal from the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict in this action brought by Homer Buffaloe (plaintiff) for breach of contract.

Plaintiff filed a complaint for breach of contract and damages in Franklin County Superior Court on 13 November 1989. Defendants, in their answers, denied the existence of the contract and

contended the alleged contract was unenforceable because it violated the statute of frauds. The case was tried with a jury during the 28 September 1992 term of Franklin County Superior Court. Plaintiff presented evidence that tended to show that he is a tobacco farmer in Franklin County, North Carolina, has known defendants for about ten years and rented tobacco from them in 1988 and 1989. Plaintiff rented from defendants, pursuant to an oral agreement, five "roanoke box [tobacco] barns" (the barns) located on their farm for use in his tobacco farming operations during the 1988 farming year. The agreement with defendants for rental of the tobacco and the barns was not reduced to writing and was based on a "handshake, oral" agreement. Plaintiff stated, "I had bought some equipment prior to then, and we always done it on a handshake agreement, cash basis. That's the way it was." Defendants agreed to provide insurance coverage for the barns in 1988. On 20 October 1988, plaintiff paid the $2,000.00 rent owed for the barns and the $992.64 owed to Patricia Hart (Mrs. Hart) for the tobacco rent.

Plaintiff began negotiating with defendants several days later about purchasing the barns. Plaintiff offered to pay $20,000.00 for the five barns in annual installments of $5,000.00 over a four year period, but did not offer any interest payments. The offer was made in Mrs. Hart's front yard with only defendants and plaintiff present. Defendants accepted the offer, and both parties shook hands. Plaintiff already had possession of the barns under the rental agreement. Plaintiff did not remove the barns from defendants' land because he agreed to farm their land in 1989 with tobacco he rented from defendants.

On 3 January 1989, plaintiff applied for a loan with Production Credit Association in order to pay for the barns. He informed Lowell Thomas Hart (Mr. Hart) that he would pay for all the barns if the loan came through. Mr. Hart responded that it "would be fine with us." On the financial statement portion of the application, he listed the barns, but his loan was denied. Plaintiff and Mr. Hart then reconfirmed that plaintiff was to pay four yearly installments of $5,000.00 for the barns. Because he was unsuccessful in obtaining insurance coverage for the barns, defendants agreed to provide insurance for the five barns for 1989 if plaintiff would reimburse them for the cost. On 20 October 1989, plaintiff promptly reimbursed defendants in full for the insurance coverage. Plaintiff testified that "[a]fter I bought the barns was the only time I agreed

to pay insurance" and when he rented the barns in 1988, Mrs. Hart "was supposed to pay" the insurance.

During the 1989 tobacco farming season, plaintiff decided to sell the barns and placed a "for sale" ad which expired 23 October 1989 under farm equipment saying "five roanoke box barns, gas, [plaintiff's] phone number" in *The News and Observer*. The ad ran two lines for four days and resulted in several calls, including contact with Ashley P. Mohorn (Mr. Mohorn), Ronald E. Stainback (Mr. Stainback), and Lawrence Elliot (Mr. Elliot). Plaintiff received a $500.00 check dated 22 October 1989 as a down payment from Mr. Mohorn for two of the barns after quoting a price of $8,000.00 each. Mr. Stainback met with plaintiff, informed him that he would take two barns, and Mr. Elliot would take one. Mr. Stainback wrote plaintiff a check for $1,000.00 dated 25 October 1989, representing a deposit on the three barns. .

Mrs. Hart called plaintiff in the fall of 1989 and asked if he could "straighten up with her," and he "told her it would be in the next two or three days" and that he was going to sell the barns. She responded that would "be fine with her." On the morning of 22 or 23 October 1989, plaintiff delivered a check in person to her for the first $5,000.00 due defendants. The payment was in the form of plaintiff's personal check number 1468, dated 23 October 1989, payable to Patricia Hart, signed by plaintiff, and with written words on the "for" line indicating the check was for payment for the five barns. When plaintiff gave her the check, she asked him if he wanted a receipt, but he said "no, the check would be the receipt." The next night after plaintiff delivered the check, she called him and told him "she didn't want to sell [him] the barns; she'd already sold them" to somebody else. Plaintiff received a letter, postmarked 26 October 1989, with the check in it. "She had torn . . . [the check] so bad you couldn't hardly put it back together," and "had tore off [plaintiff's] name — tore off her name, the 'for' line, and the date." Plaintiff was able to piece the check back together to see his signature and the five thousand dollars. He later discovered that defendants sold the five barns to "the same guys" plaintiff had agreed to sell them to.

Randy Baker (Baker) testified that plaintiff told him he had bought the barns and had him repair boxes on the barns. Plaintiff paid Baker for this work. J.R. Fowler, Jr. testified that plaintiff

told him he had bought the five barns in 1989, was going to pay five thousand dollars a year until they were paid for, was going to sell them, and had run an ad in the paper. Jack Stone (Stone), an auctioneer for the State of North Carolina, testified that "[plaintiff] approached me and said that he had some bulk barns," "said that he had purchased the barns," and "asked if [Stone] could sell them." Stone received a $41,000.00 check for the five barns and held it in escrow until he could inform plaintiff; however, plaintiff told Stone "he thought he already had them sold." After Stone informed plaintiff to let him know if he had already sold the barns, "[plaintiff] calls back and said that the lady had backed out on him and he couldn't sell the barns to nobody 'til he got this straight." At the close of plaintiff's evidence, defendants moved for a directed verdict which was denied.

Defendants presented evidence tending to show that "[plaintiff] agreed to pay [Mr. Hart] twenty thousand dollars for the five barns, and he agreed to pay it over a four year period of time"; however, plaintiff later called Mr. Hart and wished to make a new arrangement in that plaintiff would secure a loan and pay for the barns all at one time. When the loan was not approved, plaintiff contacted Mr. Hart and "wanted to know if he could continue the rental agreement that he had had the previous year." When Mr. Hart's wife told him that plaintiff "had come over and brought the rent check, and left the five thousand dollars as an enticement to buy the barns, [he] told her that it just wasn't sufficient considering the fact that there had been a tremendous acreage increase in the tobacco poundage." He instructed Mrs. Hart to call plaintiff and "tell him we weren't interested." His wife tore up the check, put it in an envelope, and mailed it to plaintiff. At the close of all the evidence, defendants moved for a directed verdict which was denied.

The jury answered the questions submitted to them as follows:

WAS THERE A CONTRACT BETWEEN THE PLAINTIFF, HOMER BUFFALOE, AND THE DEFENDANTS, LOWELL THOMAS HART AND PATRICIA HART?

ANSWER:     YES

. . . .

**BUFFALOE v. HART**

[114 N.C. App. 52 (1994)]

IF SO, DID HOMER BUFFALOE ACCEPT THE TOBAC-CO BARNS UNDER THE TERMS AND CONDITIONS OF THE CONTRACT?

ANSWER:    YES

. . . .

IF THERE WAS A CONTRACT, DID PATRICIA HART AND LOWELL THOMAS HART ACCEPT A PAYMENT FOR THE TOBACCO BARNS UNDER THE TERMS AND CONDI-TIONS OF THE CONTRACT?

ANSWER:    YES

. . . .

IF THERE WAS A CONTRACT, DID LOWELL THOMAS HART AND PATRICIA HART BREACH THIS CONTRACT?

ANSWER:    YES

. . . .

WAS THERE A RENTAL CONTRACT FOR THE TOBACCO BARNS FOR THE YEAR 1989 BETWEEN THE PLAINTIFF, HOMER BUFFALOE, AND THE DEFEND-ANTS, LOWELL THOMAS HART AND PATRICIA HART?

ANSWER:    NO

The jury awarded plaintiff damages of $21,000.00. Defendants filed a motion for judgment notwithstanding the verdict which was denied.

———————

The issues presented are whether (I) a personal check signed by plaintiff, describing the property involved and containing an amount representing partial payment is sufficient to constitute a writing under the statute of frauds; and (II) there is substantial relevant evidence that plaintiff "accepted" the barns and defend-ants "accepted" plaintiff's check, taking the contract out of the statute of frauds.

Because the barns, the subject of this dispute, are "goods" within the meaning of the Uniform Commercial Code, N.C.G.S. § 25-2-105 (1986), and because the price for the barns is at least

$500.00, the provisions of N.C. Gen. Stat. § 25-2-201 apply. The relevant provisions of this section are:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
>
>   . . . .
>
> (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
>
>   . . . .
>
> (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (G.S. 25-2-606).

N.C.G.S. § 25-2-201(1), (3)(c) (1986).

I

**[1]** Defendants argue in their brief that the check delivered by plaintiff to Mrs. Hart fails to meet the requirements of N.C. Gen. Stat. § 25-2-201(1), commonly referred to as a statute of frauds, because the check "was not negotiated or endorsed by the Defendants and therefore the signature of the Defendants did not appear on the check." A check may constitute a writing sufficient to satisfy the requirements of Section 25-2-201(1) provided it (1) contains a writing sufficient to indicate a contract of sale between the parties; (2) is signed by the party or his authorized agent against whom enforcement is sought; and (3) states a quantity. *See* N.C.G.S. § 25-2-201 official cmt.; *Harper v. Battle*, 180 N.C. 375, 376, 104 S.E. 658, 659 (1920) (check collected by defendant with her written endorsement thereon, in which property is described as "Watts Street House" is sufficient writing within statute of frauds); *Burriss v. Starr*, 165 N.C. 657, 661, 81 S.E. 929, 931 (1914) (note drawn up by defendant, signed by plaintiff, not sufficient to satisfy statute

of frauds because it did not obligate defendant to perform); *Arthur Linton Corbin, Corbin on Contracts* § 508, at 734 (1950).

The only writing in this case is a personal check which, although specifying the quantity of "five barns" on the "for" line, addressed to Patricia Hart, signed by plaintiff, and containing an amount of $5,000.00, is not sufficient to satisfy Section 25-2-201. Defendants, the parties "against whom enforcement is sought," did not endorse the check, and therefore, their handwriting does not appear anywhere on the check. In fact, the name of defendant, Mr. Hart, is totally absent from the check. Therefore, because the requirement of Section 25-2-201(1) that the writing be "signed by the party against whom enforcement is sought or by his authorized agent or broker" is absent from the check, the alleged oral contract between plaintiff and defendants is unenforceable under that section. *See Manyon v. Graser,* 411 N.Y.S.2d 746 (1978) (check for $100 on which was stated "deposit on purchase of nine-foot strip" which was not endorsed and letter stating "not feasible to sell property" were not sufficient memoranda to take oral agreement to sell land out of statute of frauds).

## II

[2] Defendants further argue that the part performance exception in Section 25-2-201(3)(c) does not apply because "there was no overt action by the plaintiff, purported buyer, in fact no change from the rental period and therefore no basis for a finding of part performance," "[t]here is no overt action of the Defendants in giving up possession of the tobacco barns," and "the delivery of the check by the Plaintiff to the Defendant, Patricia Hart, did not constitute partial payment of the contract because the check was never accepted legally by the Defendants." We disagree.

To qualify under Section 25-2-201(3)(c), the seller must deliver the goods and have them accepted by the buyer. "Acceptance must be voluntary and unconditional" and may "be inferred from the buyer's conduct in taking physical possession of the goods or some part of them." *Howse v. Crumb,* 352 P.2d 285, 288 (Colo. 1960). The official comment to Section 25-2-201 explains that for the buyer, he is required to deliver "something . . . that is accepted by the seller as such performance. Thus, part payment may be made by money or check, accepted by the seller." N.C.G.S. § 25-2-201 official cmt. Under this standard, Section 25-2-201(3)(c) presents questions of fact, which are questions for the jury, on the issue of acceptance.

**BUFFALOE v. HART**

[114 N.C. App. 52 (1994)]

*See Sass v. Thomas*, 90 N.C. App. 719, 724, 370 S.E.2d 73, 76 (1988); *Coffman v. Fleming*, 226 S.W. 67 (Mo. App. 1920), *aff'd*, 256 S.W. 731 (Mo. 1923) (question of whether plaintiff accepted check as part payment one of fact to be determined by jury).

In this case, the evidence, in the light most favorable to plaintiff, establishes that plaintiff told several people about purchasing the barns, reimbursed defendants for insurance on the barns, paid for improvements, took possession, enlisted the aid of an auctioneer and the paper to sell the barns, and received deposits from three buyers on the barns. The evidence, in the light most favorable to plaintiff, also establishes that plaintiff delivered a check for $5,000.00 on 22 October 1989 to defendants, and the check was not returned to plaintiff until 26 October 1989. Under the standards for deciding motions for directed verdict and judgment notwithstanding the verdict, *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 513-14, 428 S.E.2d 238, 242 (1993), this evidence represents substantial relevant evidence that a reasonable mind might accept as adequate to support the conclusions reached by the jury that there was a "contract between the plaintiff, Homer Buffaloe, and the defendants," plaintiff "accept[ed] the tobacco barns under the terms and conditions of the contract," and defendants "accept[ed] a payment for the tobacco barns under the terms and conditions of the contract." *See Kaufman v. Solomon*, 524 F.2d 501 (3d Cir. 1975) (whether possession by seller of check from buyer for 30 days is "acceptance" poses issue for resolution by fact finder); *Fournier v. Burby*, 148 A.2d 362 (Vt. 1959) (enforceable contract where plaintiff delivered check to defendant on 21 July 1957 and defendant returned it unendorsed by letter postmarked 6 August 1957); *Maryatt v. Hubbard*, 205 P.2d 623 (Wash. 1949) (enforceable contract where plaintiff delivered check to defendant on 23 December 1946 and defendant marked through her endorsement on check and returned it to plaintiff on 17 January 1947); *Miller v. Wooters*, 476 N.E.2d 11 (Ill. App. 1985) (oral contract within exception to statute of frauds where buyer gave check to seller in payment for truck even though buyer stopped payment on check the next day). Therefore, the trial court did not err in denying defendants' motions for directed verdict or motion for judgment notwithstanding the verdict.

No error.

Judges COZORT and ORR concur