EDWARD L. WOODS AND WIFE, BETTY R. WOODS, PLAINTIFFS v. ODELL McFADDEN MANGUM, EXECUTRIX OF THE ESTATE OF JOHN ED MANGUM, DEFENDANTS v. GEORGE W. MILLER, JR., PUBLIC ADMINISTRATOR OF THE ESTATE OF JOHN ED MANGUM, INTERVENOR DEFENDANT

No. COA08-1134

(Filed 15 September 2009)

**1. Appeal and Error— preservation of issues—failure to object—dead man statute**

The trial court did not err in an action to clear title to property by granting summary judgment in favor of plaintiffs. Even if the Estate had preserved the issue of whether an oral communication between Dr. Woods and Vann, now deceased, was incompetent evidence under N.C.G.S. § 8C-1, Rule 601(c), it waived the protection of the dead man's statute by eliciting this testimony through interrogatories.

**2. Evidence— affidavit—credibility**

The trial court did not err in an action to clear title to property by granting summary judgment in favor of plaintiffs even though the Estate contends Dr. Woods' affidavit lacked credibility because: (1) there was no evidence of untruthfulness or a personal history of misconduct; (2) the affidavits did not seem inherently incredible, the circumstances themselves are not suspect, and the Estate did not show any need for cross-examination; and (3) any credibility concerning Dr. Woods' affidavit was latent in nature, which was insufficient in itself to deny summary judgment.

1

**3. Appeal and Error— preservation of issues—summary judgment properly denied on other issues**

There was no need to address plaintiffs' remaining cross-assignments of error denying plaintiffs' motion for summary judgment on the alternative theories of estoppel and lack of standing because the trial court did not err by denying summary judgment to the Estate.

Judge HUNTER, ROBERT C. dissenting.

Appeal by intervenor defendant and cross-appeal by plaintiffs from judgment entered 10 June 2008 by Judge Howard E. Manning, Jr. in Durham County Superior Court. Heard in the Court of Appeals 11 March 2009.

*Glenn, Mills, Fisher & Mahoney, P.A., by Carlos E. Mahoney, and Pendergrass Law Firm, PLLC, by James K. Pendergrass, Jr., for plaintiffs-appellees.*

*Haywood, Denny & Miller, L.L.P., by Robert E. Levin, for intervenor defendant-appellant.*

CALABRIA, Judge.

George W. Miller, Jr. ("defendant"), as Public Administrator of the Estate ("the Estate") of John Ed Mangum ("Mr. Mangum"), appeals a judgment granting Edward L. Woods ("Dr. Woods") and Betty R. Woods' (collectively "plaintiffs") Motion for Summary Judgment and denying defendant's Motion for Summary Judgment. We affirm.

I.  Facts

On 4 August 1987, plaintiffs purchased two tracts of land in Bahama, North Carolina, from John Ed Mangum and his wife Mary Elizabeth Mangum (collectively "the Mangums"). The Mangums financed the purchase of the land, approximately 23 acres adjoining their tobacco farm, by executing a promissory note secured by a purchase money deed of trust in favor of the Mangums in the amount of $66,634. The note was payable with an initial payment of $5,000 on 31 September (sic) 1987 and annual payments of principal and interest in the amount of $10,000, beginning 1 June 1988 and continuing on the first day of June each year until paid.

Between 4 August 1987 and 11 August 1993, plaintiffs made periodic payments. On 11 August 1993, plaintiffs executed a promissory

note in the amount of $44,000 secured by a deed of trust in favor of North Central Farm Credit, ACA ("NCFC loan"). At the NCFC loan closing, plaintiffs paid Mr. Mangum $16,976.44. At that time, Mr. Mangum believed the balance due on the original note was $11,205.48. Plaintiffs dispute that there was a balance due at that time and contend that the original note was paid in full. After the NCFC loan closing, the record contains no evidence that the original deed of trust was subordinated or marked paid and cancelled in the Durham County Registry.

According to the terms of the promissory note to the Mangums, the payment that was due after 11 August 1993 became due on 1 June 1994. About this time, a dispute between the parties arose over whether payments that the Mangums were receiving on their tobacco farm from crop insurance and tobacco allotments should have been paid to plaintiffs. Plaintiffs contend that after the sale of the 23 acres, the Mangums never notified the proper authorities that their farm acreage had been reduced and that, as a result, they estimated approximately $28,663.20 in crop insurance and tobacco allotments that should have been paid to plaintiffs between 1987 and 1993 was paid to the Mangums. Plaintiffs further contend that this amount should have been credited to the balance due on their promissory note to the Mangums and that they were entitled to an offset on any balance that was due. The Mangums denied any offset was due.[1]

Between 30 June 1994 and 30 November 1995, the parties, through their respective counsel, negotiated terms of a potential settlement agreement. On 22 August 1995, Mr. Floyd B. McKissick, Jr. ("McKissick"), at that time counsel for plaintiffs, wrote to Arthur Vann ("Vann"), at that time counsel for the Mangums, offering to settle the matter in exchange for a clear title for the land and a payment by the Mangums of $16,213.42. Vann countered by a letter dated 30 August 1995 to McKissick stating that the Mangums were "willing to forget the remainder of the payment [note] and give [plaintiffs] a clear title." McKissick replied to the counteroffer on 26 October 1995 by offering to settle for cancelling the promissory note indebtedness and a payment from the Mangums of $8,100. Vann, on 3 November 1995, repeated his earlier offer. This counteroffer was forwarded to plaintiffs by their counsel. Sometime between 30 November 1995 and 17 January 1996, a conversation occurred between plaintiffs and Vann in which plaintiffs affirmed that they accepted the offer contained in Vann's letters to McKissick of 30 August and 26 October 1995. On 17

---

1. The amount of the balance due, if any, remains unliquidated.

January 1996, McKissick sent plaintiffs a letter indicating that he was attempting to "undo the damages" caused by plaintiffs' acceptance of the settlement agreement. McKissick stopped representing plaintiffs shortly thereafter.

Plaintiffs did not pursue legal action against the Mangums regarding the tobacco allotment or crop insurance claim nor did they make any further payments on the promissory note to the Mangums. The Mangums, however, failed to cancel the promissory note and deed of trust. On 10 June 1998, an attorney representing the Mangums sent plaintiffs a letter demanding $17,235.15 under the promissory note. A second letter was sent to plaintiffs on 11 August 1998, threatening foreclosure of their property. In response to this letter, Dr. Woods sent a letter to the Mangums' attorney stating, in part: "At this time, I cannot settle this matter as Mr. Mangum, his lawyer, and I had previously agreed." The Mangums took no further action to collect on the promissory note or foreclose on the property.

Mr. Mangum died on 26 June 1999. His wife at that time, Odell McFadden Mangum ("the Executrix"),[2] qualified as Executrix of Mr. Mangum's Estate and listed the promissory note as an asset of the Estate in her inventory. Plaintiffs filed a claim for the tobacco allotments and crop insurance claims from the Estate. Plaintiffs also filed for federal bankruptcy protection on 29 August 2002 and were released from bankruptcy on 3 May 2007. The Mangums' claim was not discharged as a result of plaintiffs' bankruptcy. The Executrix, who had failed to take any legal action to collect on the promissory note, was removed from her position by the Clerk of Superior Court of Durham County on 7 June 2007, and defendant was appointed Public Administrator.

Plaintiffs filed the present action against the Executrix on 20 June 2007 to obtain clear title to their property. Although the Executrix never answered the complaint, a default judgment was not entered against her. On 8 October 2007, a consent order was entered allowing defendant to intervene as an interested party in this action.

The pleadings, as they stood at the time of the Motions for Summary Judgment, included: (1) a claim by plaintiffs seeking to have the purchase money deed of trust cancelled of record, based upon a settlement between plaintiffs and the Estate's decedent; (2) a counterclaim by the Estate for payment of the balance of the note

---

2. Odell McFadden Mangum, Executrix of the Estate of John Ed Mangum, is not a party to this appeal.

plus attorney fees; and (3) a reply alleging the affirmative defenses of waiver, estoppel, accord and satisfaction, payment, statute of limitations, and lack of standing. Both parties filed a series of letters between counsel, and plaintiffs submitted an extensive affidavit from Dr. Woods. No objections appear on the record as to the admission of this documentary evidence.

On 10 June 2008, the trial court granted plaintiffs' Motion for Summary Judgment and held that the matter was settled in 1995. The trial court ordered the note and deed of trust marked cancelled in the Durham County Registry, enjoined plaintiffs from pursuing their tobacco allotment and crop insurance claims, and dismissed the pending foreclosure action. The Estate appeals the summary judgment decision on the basis that a genuine issue of material fact exists as to whether a settlement was reached and that the trial court erred in not granting summary judgment to the Estate on the promissory note. Plaintiffs cross-appeal the trial court's denial of their Motion for Summary Judgment on the issues of estoppel and defendant's lack of standing to enforce the note.

## II. Standard of Review

The standard of review on appeal for a summary judgment is whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. The question is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact.

*Sellers v. Morton*, 191 N.C. App. 75, 81, 661 S.E.2d 915, 920-21 (2008) (internal citations and quotations omitted). "The burden is upon the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *McGuire v. Draughon*, 170 N.C. App. 422, 424, 612 S.E.2d 428, 430 (2005) (citation omitted). Once the moving party has met its burden, "the opposing party must forecast evidence indicating the existence of a triable issue of material fact." *Sellers*, 191 N.C. App. at 81, 661 S.E.2d at 921 (2008) (citation omitted). "All facts asserted by the [nonmoving] party are taken as true and their inferences must be viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (internal citations omitted). On appeal, this Court reviews an order granting summary judgment *de novo. McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006)(citation omitted).

## III. Analysis

The record reveals that in 1995, the parties were aware that their respective attorneys, McKissick and Vann, were conducting settlement negotiations. Both parties submitted to the trial court detailed correspondence between counsel outlining the negotiations. In addition, plaintiffs have submitted correspondence from their counsel at the time evidencing oral conversations between plaintiffs and Vann.

[1] The Estate makes no claim that the exchange of correspondence or plaintiffs' affidavit is inaccurate or fails to accurately represent the negotiating positions of the parties at that time and do not deny the communications between counsel or between Dr. Woods and Vann. Instead, the Estate's initial argument is that summary judgment should not have been granted because plaintiffs' evidence of the settlement is dependent upon an oral communication between Dr. Woods and Vann, now deceased, and that the communication is incompetent under N.C. Gen. Stat. § 8C-1, Rule 601(c) (2007) ("the dead man's statute").

The record, however, fails to reveal that the Estate raised this issue before the trial court, and hence we cannot consider this contention because it has not been properly preserved.[3] Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure specifies that "to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1) (2008).

The Estate argues "the court took judicial notice of [Vann's] death." We assume this statement is factually correct; however, counsel does not argue, nor does it logically follow from the fact that the trial court took judicial notice of Vann's death, that an objection to Dr. Woods' affidavit on grounds that it violated the dead man's statute was properly lodged. Without a timely request, objection, or motion, we are unable to consider this assignment of error.

Even if the Estate had preserved this objection and properly assigned it as error, it waived the protection of the dead man's statute by eliciting this testimony through interrogatories. *See Breedlove*

---

3. Counsel attaches to his brief as Exhibit A, a letter dated 8 October 2008 from the State Bar documenting the death of Vann. The summary judgment order was signed 10 June 2008.

*v. Aerotrim, U.S.A., Inc.*, 142 N.C. App. 447, 452, 543 S.E.2d 213, 216 (2001).

In the instant case, plaintiffs met their burden of showing that no genuine issue of fact exists that the parties reached a settlement agreement. As plaintiffs correctly point out, a compromise and settlement is legally distinct from an accord and satisfaction. *Bizzell v. Bizzell*, 247 N.C. 590, 601, 101 S.E.2d 668, 676 (1958). Because mutual unliquidated indebtedness is the issue in these claims, compromise and settlement is the appropriate legal standard by which to judge the agreement. *Id.* The other distinction between accord and satisfaction and compromise and settlement is that no action on the part of either party is required for a compromise and settlement, while some action is required for an accord and satisfaction. *Id.*

Documentary evidence in the exchange of correspondence between the parties' respective counsel and between the Mangums' counsel and plaintiffs supports the finding of a settlement agreement. The Estate, in its brief, does not argue that the terms of the agreement are indefinite. North Carolina presumes an attorney has the authority to act for a client he professes to represent. *Gillikin v. Pierce*, 98 N.C. App. 484, 488, 391 S.E.2d 198, 200 (1990). The Estate does not claim nor does it offer any evidence that Vann's offers were unauthorized by the Mangums. Since no further action was needed to effectuate the settlement, uncontested evidence suggests that the parties had a meeting of the minds.

Furthermore, plaintiffs' forbearance in pursuing their claims for crop insurance or tobacco allotment funds, which may have been due, provides sufficient consideration for the agreement. *See Stokes v. Edwards*, 230 N.C. 306, 310, 52 S.E.2d 797, 801 (1949). While forbearance is not an act of payment, it does represent a modification of plaintiffs' legal status in reliance upon the Mangums' promise to provide "a clear title," and provides some evidence of acceptance of the settlement. Based upon the record, we also conclude that plaintiffs met their burden of showing that no genuine issue of fact exists that the parties had reached a settlement of their mutual claims between November 1995 and January 1996.

[2] Secondly, the Estate argues that *even if* a settlement had been reached, Dr. Woods' affidavit lacks credibility to the extent that it was error for the court to grant summary judgment. The Estate contends that following the agreement, the parties' conduct in continuing to pursue these same claims subsequent to the settlement casts doubt

on the credibility of Dr. Woods' affidavit that an agreement was reached. In other words, the Estate contends the parties' acts following the agreement are sufficient to supply evidence that Dr. Woods is unbelievable in his statements that he accepted the Mangums' offer.

In support of its argument, the Estate cites *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976) as authority for the proposition that the credibility of the affiant can create a genuine issue of fact. *Kidd* holds:

> . . . summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate. This is not a holding that the trial court is required to assign credibility to a party's affidavits merely because they are uncontradicted. To be entitled to summary judgment the movant must still succeed on the basis of his own materials. He must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury. Further, if the affidavits seem inherently incredible; if the circumstances themselves are suspect; or if the need for cross-examination appears, the court is free to deny the summary judgment motion. Needless to say, the party with the burden of proof, who moves for summary judgment supported only by his own affidavits, will ordinarily not be able to meet these requirements and thus will not be entitled to summary judgment.

289 N.C. 343, 370-71, 222 S.E.2d 392, 410 (1976).

Our review of the evidence submitted by the parties in the record shows that plaintiffs met the standards of *Kidd*, and the trial court was within its discretionary authority to grant summary judgment, or not, based upon its own independent determination of the credibility of the affidavits. As previously discussed, clear, uncontradicted documentary evidence illustrates the negotiations and ultimate agreement by the parties. The law looks favorably on the settlement of disputes. *Burriss v. Starr*, 165 N.C. 657, 663, 81 S.E. 929, 931 (1914). There is no evidence of untruthfulness or a personal history of misconduct. Finally, the acceptance of the offer was not to plain-

**WOODS v. MANGUM**

[200 N.C. App. 1 (2009)]

tiffs' financial benefit, if their claims against the Estate had merit. These facts satisfy the requirements of *Kidd*, which plaintiffs are required to prove for a summary judgment to be granted. The affidavits do not seem inherently incredible; the circumstances themselves are not suspect; and the Estate has not shown any need for cross-examination.

The Estate did not forecast evidence sufficient to raise a genuine issue of fact, other than the possibility of the impeachment of Dr. Woods based upon his subsequent conduct. These second thoughts can be understood as a layman misunderstanding the legal significance of a settlement agreement. Dr. Woods' ambiguous subsequent conduct can also be understood as reacting to the continued refusal of the Mangums to provide plaintiffs a clear title. Based upon the record evidence produced, plaintiffs do not lack credibility. Rather, it is the Estate whose credibility is lacking. Specifically, the Estate attempted to circumvent its duty to comply with the agreement the Mangums' attorney had negotiated in good faith with plaintiffs. Any credibility concerning Dr. Woods' affidavit is clearly latent in nature, which under *Kidd* is insufficient, in itself, for the trial court to deny summary judgment.

The forecast of the Estate's case solely based on the alleged lack of credibility of Dr. Woods did not compel the trial court to deny summary judgment. The only evidence that plaintiffs needed to produce was acceptance to written terms produced by the Mangums' attorney, which they did. The Estate has not made its case that the trial court erred in denying summary judgment.

## IV. Conclusion

[3] Because we affirm the decision of the trial court on the issue of summary judgment in favor of the plaintiffs, we necessarily conclude that the trial court did not err in denying summary judgment to the Estate, and there is no need to address plaintiffs' other cross-assignments of error denying plaintiffs' Motion for Summary Judgment on the alternative theories of estoppel and lack of standing.

Affirmed.

Judge HUNTER, Jr., Robert N., concurs.

Judge HUNTER, Robert C., dissents in a separate opinion.

HUNTER, ROBERT C., Judge, dissenting.

I disagree with the majority's conclusion that where parties to a lawsuit file cross-motions for summary judgment, the party against whom judgment was entered is precluded from arguing on appeal that material issues of fact exist, making summary judgment improper. Because I further conclude that a triable issue of fact exists as to whether the parties had previously settled their claim, I would reverse the trial court's judgment and remand for trial. Thus, I respectfully dissent.

It is well-established that "[o]ur standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones,* 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal,* 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

The majority holds that because the Estate's motion for summary judgment asserts that their forecast of evidence establishes that "there is no genuine issue as to any material fact on the claims of the Plaintiffs," the Estate is now precluded on appeal from arguing that there is a triable issue of fact with respect to its claim that the parties never entered into an agreement to settle their dispute. I disagree.

Our Supreme Court, in *Ellis v. Williams,* 319 N.C. 413, 355 S.E.2d 479 (1987), discussed the nature of summary judgment and appellate courts' role in reviewing grants of summary judgment:

[S]ummary judgment, by definition, is always based on two underlying questions of law: (1) whether there is a genuine issue of material fact and (2) whether the moving party is entitled to judgment. On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones.

*Id.* at 415, 355 S.E.2d at 481 (internal citations omitted). *Accord Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs.,* 362 N.C. 269, 277, 658 S.E.2d 918, 923-24 (2008) ("[O]n appeal [from grant of summary judgment], review is necessarily limited to whether the trial court's conclusions as to whether there is a genuine issue of material fact and whether the moving party is entitled to judgment, both questions of law, were correct."); *Smith-Price v. Charter Behavioral Health Sys.,* 164 N.C. App. 349, 353, 595 S.E.2d 778, 782 (2004) ("An

appeal from an order granting summary judgment raises only the issues of whether, *on the face of the record*, there is any genuine issue of material fact, and whether the prevailing party is entitled to a judgment as a matter of law." (Emphasis added.)).

As the applicable standard of review is de novo, an "appellate court must carefully examine the *entire record* in reviewing a grant of summary judgment," *Ellis*, 319 N.C. at 415, 355 S.E.2d at 481, in order to assess the correctness of the trial court's determination of the "two questions of law *automatically* raised by summary judgment[,]" *id.* at 416, 355 S.E.2d at 481 (emphasis added). Thus, standing alone, the statement in a motion for summary judgment that the undisputed facts entitle a party to judgment as to *their claim* does not foreclose that party from subsequently arguing on appeal that the trial court erroneously entered judgment for the prevailing party due to triable issues of fact regarding the prevailing parties' claim. It is a practical reality that parties file cross-motions for summary judgment all the time. The majority's holding would effectively preclude any party that moved for summary judgment, and did not prevail, from being able to challenge the underlying facts of the case.

The attorneys in this case, in drafting their respective motions, could have used more precise language. The gist of each motion was that, from the respective perspectives of each party, they believed that the application of the law to the undisputed facts relating to their argument entitled them to judgment as a matter of law. I do not believe that either side was conceding that the facts supportive of the other party's argument were undisputed, and that if they failed to prevail on summary judgment, they could not contest the facts on appeal. I would, therefore, address the merits of this appeal.

Turning to the merits, I believe that there is a genuine issue of material fact precluding summary judgment in this case. Simply put, in support of their motion, plaintiffs submitted affidavits and communications tending to show that the parties had reached a settlement agreement in November 1995; the Estate forecasted evidence suggesting just the opposite. In his affidavit, Dr. Woods states that Mr. Vann—Mr. Mangum's attorney—offered to settle the dispute by having the Mangums cancel the promissory note and deed of trust in exchange for plaintiffs agreement to not seek to recover the tobacco allotments. Dr. Woods explains that when he found out about the settlement offer, he contacted Mr. Vann directly and accepted the offer. Dr. Woods unequivocally states that he and his wife "believe that a settlement was reached between us and Mr. Mangum." The record

also includes a copy of plaintiffs' 30 November 2005 letter to Mr. Vann memorializing their "accept[ance]" of the Mangum's offer.

The Estate, in contrast, points to evidence of the parties' conduct after the purported settlement date indicating that they had not reached an agreement. Specifically, the Estate identifies Mr. McKissick's 17 January 1996 letter to plaintiffs in which Mr. McKissick states that he is "continuing to negotiate with Art Vann[,] the attorney for the Mangum's [sic], in connection with your case." The record also contains Mr. McKissick's 29 January 2006 termination letter to plaintiffs, stating that he would no longer be representing them in their "dispute with the Mangums relating to the transfer of tobacco allotments to you."

Plaintiffs argue that the consideration for the compromise of receiving a clear title from the Mangums was plaintiffs' agreement to not pursue their claim to recover the tobacco allotments. Plaintiffs, however, sent a demand letter to the Estate on 8 October 1999, claiming $35,032.80 for the tobacco allotments—a letter sent prior to the Estate's demand on the note. This evidence, when considered in the light most favorable to the Estate, as is required on review of summary judgment, tends to show that the parties had not entered into a settlement agreement in November 1995.

It is not possible to determine whether the parties reached a settlement without first assigning greater weight or credibility to one party's evidence or the other's. However, "[i]f there is any question as to the weight of evidence, summary judgment should be denied." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999). Cases, such as this one, where there is conflicting evidence as to whether a settlement agreement has been reached are precisely the type of cases in which summary judgment is inappropriate.[4] *See Credit Union v. Smith*, 45 N.C. App. 432, 437, 263 S.E.2d 319, 322 (1980) (concluding summary judgment should be denied "[i]f different material conclusions can be drawn from the evidence"); *see also Sanyo Electric, Inc. v. Albright Distributing Co.*, 76 N.C. App. 115, 118, 331 S.E.2d 738, 740 (stating summary judgment should be denied unless "the *only* reasonable

---

4. Here, if the trial court had not entered summary judgment, it would have heard the case in a bench trial since nether party requested a jury trial. In that scenario, the parties could have stipulated to the evidence to be presented in order to avoid oral testimony, and requested the trial court to make findings of fact and conclusions of law under Rule 52(a) of the North Carolina Rules of Civil Procedure. The parties could then challenge the trial court's stated findings and conclusions on appeal.

inference" from materials is that settlement agreement was reached (emphasis added)), *disc. review denied*, 314 N.C. 668, 335 S.E.2d 496 (1985). Here, the evidence was in dispute as to compromise and settlement. For the foregoing reasons, I respectfully dissent.