GARLAND S. TUCKER, JR. AND WIFE, JEAN B. TUCKER v. CHARTER MEDICAL CORPORATION

No. 8110SC1187

(Filed 15 February 1983)

1. **Landlord and Tenant § 19.1— action for rent—no interference with use of property by lessor**

   In an action to recover rental payments for the lease of a tract of land, the record did not support defendant's contention that plaintiff lessors deliberately encouraged or acquiesced in action by the city council approving a connection road across the leasehold property so as to constitute a breach of the covenant of quiet enjoyment, constructive eviction of defendant lessee, or tortious interference with the leasehold.

2. **Landlord and Tenant § 6— assistance to lessee not required—lease not subject to rescission**

   Defendant lessees were not entitled to rescission of a lease on the ground that plaintiff lessors failed to give it reasonable assistance in obtaining approvals, licenses, and permits for a 150 bed hospital as required by the lease where defendant lessee had decided not to build a 150 bed hospital on the leased premises.

**3. Landlord and Tenant § 6— purpose of lease not frustrated**

The purpose of a lease was not frustrated so as to entitle defendant lessee to rescind the lease where the lease provided that the lessee could use and occupy the leased premises for any lawful purpose, including but not limited to the construction, operation and expansion of medical care facilities, office buildings or other structures permitted by zoning ordinances, and the lessee has merely been denied site approval by the city for construction of a 40,000 square foot building which would have been in the path of a proposed connection street across the leased property.

**4. Landlord and Tenant § 6— rejection of lessee's site plan because of proposed road—no constructive condemnation**

The city council's rejection of a lessee's site plan for an office building on the leased property because the proposed building would lie in the path of a proposed connection street across the leased property did not constitute a constructive condemnation of a portion of the leased property so as to give the lessee the option under the lease to reduce the rent proportionately where no formal steps have been taken by the city either to initiate condemnation procedures or to begin road construction.

**5. Rules of Civil Procedure § 56— conclusory statement in affidavit—no consideration on motion for summary judgment**

The trial court properly ruled that a statement in an affidavit that plaintiff had the opportunity to reject a road across his property if he had chosen to do so was conclusory and should not be considered by the court in ruling on a motion for summary judgment.

**6. Trial § 3.2— summary judgment hearing—denial of motion for continuance—no abuse of discretion**

The trial court did not abuse its discretion in the denial of defendant's motion for a continuance of a hearing on plaintiffs' motion for summary judgment because defendant was informed three days before the scheduled hearing that the assigned judge would disqualify himself from the hearing and defendant ceased preparation of its case where defendant was advised one or two days prior to the hearing that another judge would preside on the date originally scheduled; after hearing the matter on the scheduled date, the trial judge adjourned the case until six days later, with leave for other affidavits to be filed within three days; and defendant filed an additional affidavit within the allotted time.

APPEAL by defendant from *Herring, Judge.* Order entered 20 July 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 2 September 1982.

Plaintiffs are the owners of a parcel of land located in the City of Raleigh. On 28 January 1981 they instituted this action in District Court against their lessee, Charter Medical Corporation (Charter), for the recovery of two rental payments, due 1 Decem-

ber 1980 and 1 January 1981, which remained unpaid after demand. Plaintiffs moved for summary judgment and upon defendant's motion, the matter was transferred to Superior Court. Plaintiffs' motion for summary judgment was granted.

*Manning, Fulton and Skinner, by Howard E. Manning and Samuel T. Oliver, Jr., for plaintiff-appellees.*

*Jordan, Brown, Price and Wall, by John R. Jordan, Jr., and Joseph E. Wall, and Trotter, Bondurant, Miller and Hishon, by H. Lamar Mixson, for defendant-appellant.*

VAUGHN, Chief Judge.

Defendant's first argument is that the trial judge erred in granting the plaintiffs' motion for summary judgment. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). "An issue is material if the facts alleged would constitute a legal defense or would affect the result of the action." *North Carolina National Bank v. Gillespie,* 291 N.C. 303, 310, 230 S.E. 2d 375, 379 (1976). The moving party has the burden of showing there is no triable issue of fact when the evidence is regarded in the light most favorable to the non-moving party. *Kent v. Humphries,* 303 N.C. 675, 281 S.E. 2d 43 (1981).

The following material uncontradicted evidence was presented at the hearing. In 1971 plaintiffs owned a parcel of land on the east side of Glenwood Avenue in Raleigh and another parcel located across the street on the west side of Glenwood Avenue. On 26 August 1971 defendant, intending to build a hospital, entered into a 40-year lease (effective 15 September 1973) with plaintiffs for the east parcel. The property was zoned Residential -10, which permitted the construction of a hospital.

In February 1975, the City of Raleigh rezoned a portion of the east parcel from Residential -4 to Conservation/Buffer. The rezoned portion was a one hundred fifty foot strip on the eastern boundary of the property.

In January 1977, residents of the area on the west side of Glenwood Avenue petitioned the Raleigh City Council to state their opposition, previously expressed in a petition filed in 1974, to the connection of Blenheim Drive, running through their communities and bordering the Tucker land, with Glenwood Avenue at Women's Club Drive which borders the land leased by Charter. On 25 April 1977, plaintiffs applied to the City of Raleigh for a subdivision of the west parcel. At the 7 June 1977 meeting of the Raleigh Planning Commission the subdivision request was approved. The Commission noted the opposition of citizens concerned with the Blenheim Drive-Glenwood Avenue connection and considered alternate routes for traffic flow onto Glenwood Avenue, one of which was a connection between two existing roads across the east parcel. This matter was discussed at the 28 June 1977 meeting of the Raleigh Public Works Committee, where residents again voiced opposition to a Blenheim connection. The proposed connection road across the east parcel was discussed and plaintiff Garland Tucker voiced his opposition to the building of such a road on his land, saying the road might make the property unusable by his lessee. The Committee recommended approval of Tucker's subdivision request and of the extension of the connection road across the east parcel. On 19 July 1977 the Raleigh City Council approved the basic plan for subdivision on the west parcel and the concept of the road extension on the east parcel. On 28 February 1979 Charter petitioned for the rezoning of the east parcel stating the need in the area for small professional office buildings. On 4 May 1979, in an effort to facilitate its rezoning request, Charter entered into an agreement with adjoining property owners which added an additional 75 foot buffer zone to the property and imposed further building restrictions in the buffer zones and along two adjoining roads. On 5 June 1979 the City Council approved Charter's request for rezoning to "Office and Institutional-III," a type of zoning which is more restrictive in that, among other things, site plan approval for any use of the land has to be given by the City Council. On 30 June 1980 Charter submitted to the City of Raleigh a site plan for the construction of a 40,000 square foot building on the east parcel. On 16 September 1980 the City Council voted to uphold the recommendation of the Planning Commission that previous Council action approving the concept of the connection road across Charter's property be referred back for plan approval. The City took no for-

Tucker v. Charter Medical Corp.

mal condemnation action and no plans for street construction were implemented. On 7 October 1980 the City Council denied Charter's request for construction of its proposed building because it was in the path of the proposed street. Charter did not appeal from that decision. Charter failed to make its December 1980 and January 1981 rent payments.

The record presents no genuine issue as to any material fact affecting this controversy. The only question remaining is whether the trial judge correctly ruled, as a matter of law, that defendant's counterclaims and defenses were without merit and the rent payments were due to plaintiffs.

[1] Defendant classifies its defenses and counterclaims into three basic theories. The initial category includes breach of the covenant of quiet enjoyment resulting in a breach of contract, constructive eviction, and tortious interference with the leasehold. The crux of defendant's allegations is that plaintiffs deliberately encouraged or acquiesced in the action by the City Council approving the connection road across the leasehold property. These acts or omissions allegedly resulted in serious injury to defendant's use, enjoyment, and possession of the leased property, particularly as to the original purpose for which the property was leased, the construction of a hospital. The record does not support defendant's allegations. Defendant acknowledges that landlords are not usually liable for the independent acts of government officials in condemning or otherwise placing restrictions on leased premises. *See generally,* 49 Am. Jur. 2d *Landlord and Tenant,* §§ 322, 584 (1970). Nor do we find in the record the purposeful actions or inaction on the behalf of plaintiffs as contended by defendant. The single reference to plaintiffs concerning the City's approval of this particular connection road, is in the minutes of the 28 June 1977 meeting of the Public Works Committee where plaintiff Garland Tucker addressed the Committee stating that it was "not his request that the road be extended across [the leased premises] and that he would rather it not be extended as it would serve no purpose in development of this land." Tucker further submitted an affidavit to the court wherein he affirmed his appearance before the Committee to state his personal opposition to the plan for the road.

[2] Defendant also argues that it is entitled to rescission of the lease because the plaintiffs failed to give it reasonable assistance

or because they acted unreasonably to its detriment. Defendant fails to cite any authority for using a reasonable care standard, which is the standard of care applied to a negligence action. The argument lacks merit even if reasonable care was an appropriate standard in this case. In the lease agreement, the plaintiffs agreed to "cooperate with Charter in obtaining such approvals, licenses, and permits as may be required for it to construct a 150-bed, expandable to a 200-bed acute care medical-surgical hospital with obstetrical services on the premises without any expense to Lessors." Defendant decided not to build a 150-bed hospital on the site because it "wanted to switch to a piece of property that would have afforded the chance to expand the hospital into a five hundred (500) bed hospital." This would require about fifteen acres. The east parcel is approximately 6.88 acres. Since the lease stated that the lessors would assist defendant in obtaining approvals, licenses, and permits for a 150-bed hospital, and the defendant decided not to build a 150-bed hospital, plaintiffs had no express duty to assist defendant. There is no merit to the contention that plaintiffs acted unreasonably to the defendant's detriment.

[3] Defendant argues that the proposed road through its property is in effect a breach of the leasehold agreement. It contends that its known purpose of constructing a hospital has been substantially frustrated by the space limitations imposed by the road and that plaintiffs have breached their implied covenant not to interfere with its use and development of the land. As previously discussed, we find no support in the record for the allegation that the Tuckers have purposefully hindered the development of the leasehold. Nor do we conclude that the purpose of the lease has been frustrated. The lease provides that Charter may use and occupy the premises for any lawful purpose, expressly including but not limited to the construction, operation, and expansion of medical care facilities, office buildings, or any other structures permitted by zoning ordinances presently or hereafter in force." Charter has merely been denied site approval by the City for construction of a 40,000 square foot building in the right-of-way of the proposed road. The proposed street plan would not have affected defendant had it not requested that the east parcel be rezoned to Office and Institutional-3 which requires the City Council to approve all site plans before anything is built on

the land. The City Council may refuse approval on the grounds that it fails to provide unity of development with other properties, fails to protect the public from a dangerous arrangement of vehicle and pedestrian ways, or that it fails to adequately protect other property from any adverse effect of an office operation. Raleigh Code § 10-2038. Had defendant not requested the property to be rezoned to Office and Institutional-3 it could have built the office building without site approval.

There is no evidence that other commercially feasible ventures have been frustrated or prohibited. In order for the doctrine of frustration of purpose to constitute a defense to the obligation to pay rent under a valid lease, the subject of the contract must be destroyed. *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 141 S.E. 2d 292 (1965); *Knowles v. Carolina Coach Company*, 41 N.C. App. 709, 255 S.E. 2d 576, *review denied*, 298 N.C. 298, 259 S.E. 2d 913 (1979).

[4] We also find no merit in defendant's third basis for relief: constructive condemnation. The lease provides that if the entire property is condemned and possession taken by a public authority, then the lease shall cease and the rent be accounted for. A partial taking by a public authority gives Charter the option to reduce the rent proportionately or to receive the condemnation award. It is clear that there has been no actual condemnation of this land by any public authority. Charter however contends that the land use restriction represented by the proposed road constitutes a functional taking of the property, an inverse condemnation. The rejection of Charter's site plan by the City Council is not, however, a taking within the meaning of the lease. Furthermore, no formal steps have been taken by the City either to initiate condemnation procedures or begin road construction. The preparation of maps or even the adoption of a plan (which may never be carried out) is not a taking or damaging of the property affected so as to constitute a condemnation in any form. *Barbour v. Little*, 37 N.C. App. 686, 247 S.E. 2d 252, *review denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978).

It is undisputed that Charter has not paid the December and January rent payments due under the lease. We find that the trial judge was correct in finding no merit in the defenses and counterclaims raised by Charter to the nonpayment. The entry of summary judgment was correct.

[5] Defendant next assigns error to the trial judge's ruling that the following statement in the affidavit of James Donald Blackburn was conclusory and would not be considered by the court in its ruling on the summary judgment motion: "Mr. Tucker had the opportunity [at the 28 June 1977 meeting of the Raleigh Public Works Committee] to reject this extension but did not do so." Affidavits filed in support of a summary judgment motion "shall set forth such facts as would be admissible in evidence." G.S. 1A-1, Rule 56(e). Although Mr. Blackburn was present at several public meetings in which the proposed road was discussed, his statement merely contains his conclusion that Tucker could have rejected the road if he had so chosen. We agree that the statement was correctly stricken from the affidavit.

[6] Defendant next argues that the trial judge erred in denying its motion for a continuance. It contends that when it was informed three days before the scheduled hearing that the assigned judge was to disqualify himself from the hearing, it justifiably ceased preparation of its case. The record shows that "one or two days" prior to the hearing the defendant was advised that another Superior Court judge would preside on the date originally scheduled. After hearing the matter on the scheduled date, the trial judge adjourned the cause until six days later, with leave for other affidavits to be filed within three days. Defendant filed an additional affidavit within the allotted time period. We find no evidence of abuse of the trial court's discretion based upon these facts.

The judgment below is

Affirmed.

Judges HILL and JOHNSON concur.