S. Coll. St., LLC v. Charlotte Sch. of Law, LLC, 2018 NCBC 80.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 18 CVS 787 |

| | |
|---|---|
| SOUTH COLLEGE STREET, LLC, | |
| Plaintiff, | |
| v. | **ORDER AND OPINION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| CHARLOTTE SCHOOL OF LAW, LLC, and INFILAW CORPORATION, | |
| Defendants. | |

1.     **THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment (the "Motion"). Having considered the Motion, the briefs in support of and in opposition to the Motion, and the arguments of counsel at a hearing on the Motion, the Court **GRANTS** the Motion.

*Troutman Sanders LLP, by Kiran H. Mehta and Christopher G. Browning, Jr., for Plaintiff.*

*Womble Bond Dickinson (US) LLP, by Debbie W. Harden, Johnny M. Loper, Sarah Motley Stone, and Jackson R. Price, for Defendants.*

Robinson, Judge.

## I.     FACTUAL BACKGROUND

2.     The Court does not make findings of fact when ruling on a motion for summary judgment. *E.g.*, *In re Estate of Pope*, 192 N.C. App. 321, 329, 666 S.E.2d 140, 147 (2008). The following factual background, taken from the undisputed evidence submitted in support of and in opposition to the Motion, is intended solely to provide context for the Court's analysis and ruling.

3.     Plaintiff South College Street, LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business in New York. (Compl. ¶ 1, ECF No. 3; Answer ¶ 1, ECF No. 13.) Plaintiff is registered to do business in North Carolina. (Compl. ¶ 1; Answer ¶ 1.)

4.     Defendant Charlotte School of Law, LLC ("CSL") is a Delaware limited liability company registered to do business in North Carolina. (Compl. ¶ 2; Answer ¶ 2.) CSL was founded in 2006 as a for-profit law school and was accredited by the American Bar Association ("ABA") in 2011. (Compl. ¶ 2; Answer ¶ 2; Br. Opp'n to Pl.'s Mot. Partial Summ. J. Ex. A, ¶ 7, ECF No. 30.1 ["Ogene Aff."].)

5.     Defendant InfiLaw Corporation ("InfiLaw") is a Delaware corporation with its principal place of business in Florida. (Compl. ¶ 3; Answer ¶ 3.) InfiLaw is registered to do business in North Carolina. (Compl. ¶ 3; Answer ¶ 3.) InfiLaw owns CSL. (Compl. ¶ 3; Answer ¶ 3.)

6.     On or about October 11, 2012, Hines Charlotte Plaza LP ("Hines") and CSL executed an Office Building Lease Agreement (the "Lease") pursuant to which CSL agreed to lease approximately 250,000 square feet of space in an office building then owned by Hines (the "Charlotte Plaza") in Charlotte, North Carolina (the "Premises"). (Compl. ¶ 9; Answer ¶ 9; Compl. Ex. A, § 1.6, ECF No. 3.1 ["Lease"]; Compl. Ex. C, §§ 2, 4, ECF No. 3.3.) On or about that same day, InfiLaw executed a Guaranty of Lease (the "Guaranty") pursuant to which InfiLaw guaranteed, "for and on behalf of [Hines] and [Hines]'s transfers, successors and assigns, the full and complete performance and payment (as applicable) of all of the obligations, liabilities and

duties of any nature and kind of [CSL], its successors and assigns . . . under the Lease[.]" (Compl. ¶ 10; Answer ¶ 10; Compl. Ex. B, at 1, ECF No. 3.2 ["Guaranty"].) The Lease is expressly conditioned on InfiLaw executing the Guaranty. (Lease § 52.)

7.      The Lease provides for a thirteen-year term beginning on August 1, 2013 (the "Lease Term"). (Lease § 1.7.) The Lease obligates CSL to pay rent to Hines on or before the first day of each month for each month of the Lease Term. (Lease § 3.1.) The Lease states that CSL shall be deemed in default if it

> shall fail to pay when due any Rent or other sums payable by [CSL] hereunder within five (5) business days after written notice of such failure is given (or deemed given) to [CSL]; provided, however, such notice and such grace period shall be required to be provided by [Hines] and shall be accorded [CSL], if necessary, only one (1) time during any Lease Year,[1] and a default by [CSL] shall be deemed to have immediately occurred upon the failure by [CSL] to pay when due any Rent or other sums payable by [CSL] hereunder within five (5) business days after the due date within any Lease Year of the Lease Term after once being noticed and given an opportunity to cure as set forth above in any Lease Year.

(Lease § 20.1.)

8.      Section 7.1 of the Lease states that CSL "shall use the Premises only for the Permitted Use." (Lease § 7.1.) "Permitted Use" is defined as an

> [e]ducational institution, as well as for general office space, uses ancillary to its business and other legally permitted uses (with such other legally permitted uses if same are not ancillary to the foregoing Permitted Use as an educational institution to be subject to [Hines]'s approval, which approval shall not be unreasonably withheld, delayed or conditioned), consistent with the operation of first class office space, subject to the restrictions as defined in Exhibit "I" attached hereto.

---

[1] "Lease Year" is defined as the twelve months following the Lease start date of August 1, 2013 and each subsequent twelve-month period thereafter through the end of the Lease Term. (Lease § 1.14.)

(Lease § 1.13.) Exhibit I expressly prohibits CSL, other than for the Permitted Use, from leasing or permitting occupancy of office or retail space in the Charlotte Plaza to seven categories of tenants without Hines's prior written consent, which consent shall not be unreasonably withheld, delayed, or conditioned. (Lease Ex. I.) The categories of tenants include governmental entities, healthcare providers, employment agencies, and broadcasting facilities. (Lease Ex. I.) Exhibit I also expressly prohibits CSL, without Hines's prior written consent, from leasing or permitting occupancy of office space to publishers and photocopy shops, tenants with a density greater than that permitted by applicable laws, and any tenant conducting a retail business in any portion of the office space in the Charlotte Plaza. (Lease Ex. I.)

9. On December 3, 2014, Plaintiff entered into an agreement with Hines to purchase the Charlotte Plaza. (Aff. Maidad Rabina in Supp. Pl.'s Mot. Partial Summ. J. ¶ 3, ECF No. 25.3 ["Rabina Aff."].) The purchase closed on April 17, 2015, and on or about that same day, Hines informed CSL that the Charlotte Plaza had been sold to Plaintiff and that CSL was to make all future payments under the Lease directly to Plaintiff. (Rabina Aff. ¶¶ 3, 10a, Attachment 2.) From April 2015 to October 1, 2017, CSL paid its monthly rent to Plaintiff. (Rabina Aff. ¶ 10a.)

10. On November 14, 2016, the ABA notified CSL that it was being placed on probation due to CSL's failure to comply with certain ABA Standards for the Approval of Law Schools. (Ogene Aff. ¶ 15, Ex. 3, at 7.) The ABA directed CSL to take specific remedial actions. (Ogene Aff. ¶ 15.)

11. On December 19, 2016, the United States Department of Education ("DOE") denied CSL's application for recertification to continue to participate in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965. (Ogene Aff. ¶ 19, Ex. 3.) As a result, effective December 31, 2016, students could no longer obtain federal financial assistance to attend CSL. (Ogene Aff. ¶ 20, Ex. 3.)

12. On June 21, 2017, the University of North Carolina Board of Governors (the "Board of Governors") imposed conditions and limitations on CSL's license to conduct post-secondary degree activities in the State of North Carolina. (Ogene Aff. ¶ 23, Ex. 4.) One such condition was that the DOE must determine no later than August 10, 2017 that CSL students may participate in Title IV loan programs. (Ogene Aff. ¶ 23, Ex. 4, at 2.)

13. The DOE did not agree to restore CSL's participation in Title IV programs by August 10, 2017. (Ogene Aff. ¶ 24.) Accordingly, CSL's state license to conduct post-secondary degree activity expired, and CSL ceased operating on August 11, 2017. (Ogene Aff. ¶¶ 24, 26, Ex. 4, at 3.)

14. On October 1, 2017, CSL failed to pay its monthly rent due under the Lease. (Rabina Aff. ¶¶ 10a, 13.) By letter dated October 10, 2017, Plaintiff notified Defendants that CSL had failed to pay rent and demanded payment of all sums due. (Rabina Aff. ¶ 13; Compl. Ex. G, ECF No. 3.7.)

15. On October 26, 2017, CSL notified Plaintiff that it had abandoned the Premises. (Rabina Aff. ¶ 15, Attachment 13.)

16. From October 1, 2017 and continuing through the present, CSL and InfiLaw have failed to make monthly rent payments due under the Lease. (Rabina Aff. ¶¶ 10a, 13–14, 18; InfiLaw's Objs. & Resps. to Pl.'s First Set of Interrogs. & Reqs. for Produc. 5, ECF No. 25.1.)

## II. PROCEDURAL HISTORY

17. Plaintiff filed its Complaint on January 12, 2018. The Complaint asserts a claim against CSL for breach of the Lease and a claim against InfiLaw for breach of the Guaranty. (Compl. 6, 8.)

18. This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, dated January 16, 2018, (ECF No. 7), and assigned to the Honorable Adam M. Conrad by order of then Chief Business Court Judge James L. Gale dated January 18, 2018, (ECF No. 2). This case was later reassigned to the undersigned by order dated April 6, 2018. (ECF No. 22.)

19. On March 19, 2018, Defendants filed their Answer to the Complaint.

20. On May 11, 2018, Plaintiff filed the Motion. (ECF No. 25.) The Motion has been fully briefed, and the Court held a hearing on the Motion on August 1, 2018. The Motion is now ripe for resolution.

## III. LEGAL STANDARD

21. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled

to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

22. The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). "If the movant successfully makes such a showing, the burden then shifts to the non-movant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C. Gen. Stat. § 1A-1, Rule 56(e).

## IV.   ANALYSIS

### A.   Plaintiff's Claim Against CSL for Breach of the Lease

23. Plaintiff moves for summary judgment in its favor on the issue of CSL's liability, contending that CSL breached the Lease by failing to pay its monthly rent. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 9, ECF No. 26 ["Pl.'s Mem."].) CSL does not dispute that it has not paid rent since October 2017; rather, CSL argues that the

doctrine of frustration of purpose excuses CSL's performance obligations under the Lease. (Br. Opp'n to Pl.'s Mot. Partial Summ. J. 7, ECF No. 30 ["Br. Opp'n"].)

24. The Lease is a valid contract between Plaintiff, as Hines's assignee, and CSL. (Rabina Aff. ¶¶ 3, 10a; Lease § 33.) The express terms of the Lease require CSL to pay rent to Plaintiff on or before the first day of each month of the Lease Term. (Lease § 3.1.) It is undisputed that from October 1, 2017 and continuing through the present, CSL has failed to pay rent due under the Lease. (Rabina Aff. ¶¶ 10a, 13–14.) Therefore, CSL has breached the Lease unless the doctrine of frustration of purpose excuses CSL's performance obligations.

25. "Changed conditions supervening during the term of a contract sometimes operate as a defense excusing further performance on the ground that there was an implied condition in the contract that such a subsequent development should excuse performance or be a defense . . . ." *Faulconer v. Wysong & Miles Co.*, 155 N.C. App. 598, 601, 574 S.E.2d 688, 691 (2002). The frustration of purpose doctrine excuses performance "whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance." *WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 254, 644 S.E.2d 245, 248 (2007). "The doctrine of commercial frustration is based upon the fundamental premise of giving relief in a situation where the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose." *Faulconer*, 155 N.C. App. at 601, 574 S.E.2d at 691. "However, the doctrine of frustration cannot be used where the frustrating event was reasonably

foreseeable." *WRI/Raleigh, L.P.*, 183 N.C. App. at 254, 644 S.E.2d at 248. "In addition, if the parties have contracted in reference to the allocation of the risk involved in the frustrating event, they may not invoke the doctrine of frustration to escape their obligations." *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 211, 274 S.E.2d 206, 209 (1981). "Essentially, there must be an implied condition to the contract that a changed condition would excuse performance; this changed condition causes a failure of consideration or the expected value of performance; and that the changed condition was not reasonably foreseeable." *Faulconer*, 155 N.C. App. at 602, 574 S.E.2d at 691.

26.     CSL argues that its ability to operate a law school on the Premises was an implied condition in the Lease and that several interrelated regulatory and governmental actions, including and culminating in the expiration of CSL's state license, resulted in a failure of consideration and a destruction of the expected value of the Lease. (Br. Opp'n 7, 9–12.) CSL argues that the express language of the Lease restricts use of the Premises to an educational institution and uses ancillary to its business as an educational institution, thereby implying a condition in the Lease that CSL be able to use the Premises to operate an educational institution. (Br. Opp'n 11.)

27.     The Lease, however, expressly contemplates use of the Premises other than as an educational institution. The Lease provides that CSL "shall use the Premises only for the Permitted Use." (Lease § 7.1.) The Lease defines "Permitted Use" as an "[e]ducational institution," "general office space," "uses ancillary to its business," and "other legally permitted uses" consistent with the operation of first class office space.

(Lease § 1.13.)  Although "other legally permitted uses" that are not ancillary to its business as an educational institution are subject to Plaintiff's approval, the Lease expressly states that Plaintiff's approval "shall not be unreasonably withheld, delayed or conditioned." (Lease § 1.13.)  Thus, the express language of the Lease does not support CSL's position that there is an implied condition in the Lease that CSL be able to operate a law school on the Premises and that CSL's inability to do so should excuse performance.

28. Further, the Lease contains a force majeure clause that states:

> When a period of time is herein prescribed for any action, *other than the payment of any monetary sums due hereunder*, to be taken by [Plaintiff] or [CSL], [Plaintiff] or [CSL], as applicable, shall not be liable or responsible for and there shall be excluded from the computation for any such period of time, any delays due to strikes, riots, terrorism, acts of God, shortages of labor or materials, war, laws, regulations or restrictions, inability or delays in obtaining governmental permits, or any other causes of any kind whatsoever which are beyond the reasonable control of [Plaintiff] or [CSL.]

(Lease § 31 (emphasis added).)  In this clause, the parties to the Lease agreed that CSL would not be liable or responsible for delays in timely carrying out its obligations under the Lease—other than its payment obligations—due to regulations or restrictions or the inability to obtain government permits.  Thereby, the parties expressly agreed that if CSL fails to timely pay sums due under the Lease, it is in breach and not excused due to its inability to obtain government permits.  The fact that the Lease expressly excepts CSL's rent payment obligation from the protections of the force majeure clause precludes CSL's argument that it is somehow excused from paying rent because it lost its license to operate a law school.

29. Moreover, even assuming the first two requirements of the frustration of purpose defense are met, CSL has failed to come forward with sufficient evidence that CSL's inability to operate a law school caused a failure of consideration or a total destruction of the expected value of performance. As discussed above, the Lease allows CSL to use the Premises for general office space and separately for other legally permitted uses consistent with the operation of first class office space, subject to Plaintiff's approval, which shall not be unreasonably withheld, delayed, or conditioned. *See Tucker v. Charter Med. Corp.*, 60 N.C. App. 665, 670−71, 299 S.E.2d 800, 803−04 (1983) (concluding that the frustration of purpose doctrine was not a defense to defendant's obligation to pay rent under a valid lease when the lease provided that defendant could use the premises for any lawful purpose and there was no evidence that uses other than defendant's intended use of building a hospital had been frustrated or prohibited).

30. In addition, the Lease permits CSL to assign its interest in the Lease or sublease the Premises with the prior written consent of Plaintiff, which consent shall not be unreasonably withheld, delayed, or conditioned. (Lease §§ 11.1−.2.) Indeed, on or about May 18, 2016, CSL sought and obtained Plaintiff's approval to sublease a portion of the Premises to Gresham Smith and Partners. (Rabina Aff. ¶ 10e, Attachment 9.) Further, prior to Plaintiff's purchase of the Charlotte Plaza, CSL obtained Hines's approval in January 2014 to sublease part of the Premises to Navigant Consulting, Inc. (Rabina Aff. ¶ 10e, Attachment 6.)

31.     In sum, CSL's inability to operate a law school did not result in a failure of consideration or destroy the expected value of performance under the Lease. *See Tucker*, 60 N.C. App. at 671, 299 S.E.2d at 804 ("In order for the doctrine of frustration of purpose to constitute a defense to the obligation to pay rent under a valid lease, the subject of the contract must be destroyed."). CSL could have used the premises for general office operations, or could have sought Plaintiff's approval to use the Premises for another legally permitted use or to assign its interest in the Lease or sublease the Premises. Therefore, the frustration of purpose doctrine does not excuse CSL's payment obligations under the Lease, and Plaintiff is entitled to summary judgment on the issue of CSL's liability on Plaintiff's claim for breach of the Lease.

**B.      Plaintiff's Claim Against InfiLaw for Breach of the Guaranty**

32.     Plaintiff also seeks summary judgment in its favor on the issue of InfiLaw's liability, contending that InfiLaw breached the Guaranty by failing to fulfill CSL's obligation under the Lease to pay rent. (Pl.'s Mem. 9.) InfiLaw does not dispute that it has not made any rent payments; rather, InfiLaw appears to argue that because the frustration of purpose doctrine excuses CSL's performance under the Lease, InfiLaw's performance under the Guaranty is likewise excused. (*See* Br. Opp'n 7.)

33.     Even assuming *arguendo* that a valid frustration of purpose defense to CSL's performance under the Lease would also excuse InfiLaw's performance under the Guaranty, the Court has concluded that the frustration of purpose doctrine does not excuse CSL's performance. The evidence is undisputed that InfiLaw agreed to

guaranty CSL's payment obligations under the Lease and, despite written notice to InfiLaw, InfiLaw has failed and refused to make any payments due under the Lease. (Compl. Ex. B; InfiLaw's Objs. & Resps. to Pl.'s First Set of Interrogs. & Reqs. for Produc. 5; Rabina Aff. ¶ 18.) Therefore, Plaintiff is entitled to summary judgment on the issue of InfiLaw's liability on Plaintiff's claim for breach of the Guaranty.

### C.    Defendants' Request to Hold the Motion in Abeyance

34.    Defendants alternatively argue that if the Court does not deny Plaintiff's Motion outright, then the Court should hold the Motion in abeyance until after the close of discovery.  (Br. Opp'n 14.)  Defendants maintain that their outstanding interrogatories and requests for production served on Plaintiff "seek a plethora of information related to the Premises, the Lease, and Plaintiff's actions with respect to the same," and that this "information very well may lead to the discovery of facts that would support additional defenses to Plaintiff's claims – both affirmative and factual." (Br. Opp'n 15–16.)

35.    As explained below, the significant fact is that Defendants have failed to show that their outstanding discovery will dispute the basis on which Plaintiff's Motion rests—that is, Defendants do not contest and do not expect to contest that they failed to pay rent when due—and Defendants' outstanding discovery is not pointed toward a potential recognizable defense to liability.

36.    In support of their argument, Defendants rely on the general rule that "[o]rdinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant

to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Howse v. Bank of Am., N.A.*, 804 S.E.2d 552, 558 (N.C. Ct. App. 2017) (alteration in original). Notwithstanding this general rule, however, the express language of Rule 56 is clear that if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law, "[t]he judgment sought *shall* be rendered forthwith." N.C. Gen. Stat. § 1A-1, Rule 56(c) (emphasis added); *see also First Citizens Bank & Tr. Co. v. Holland*, 51 N.C. App. 529, 530, 277 S.E.2d 108, 110 (1981) ("Summary judgment *must* be granted, upon motion, 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" (emphasis added) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c))). Further, Rule 56 expressly provides that if the movant carries its initial burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the non-movant's "response, by affidavits or as otherwise provided in this rule, *must* set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, *shall* be entered against him." N.C. Gen. Stat. § 1A-1, Rule 56(e) (emphasis added); *see also Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) ("[T]he rule requires the party opposing a motion for summary judgment -- notwithstanding a general denial in his pleadings -- to show that he has, or will have, evidence sufficient to raise an issue of fact. If he does not,

summary judgment, if appropriate, shall be entered against him." (quotation marks omitted)).

37. If, however, the nonmovant cannot present by affidavit facts necessary to oppose the motion, the nonmovant may seek a continuance pursuant to Rule 56(f). *Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 581−82, 589 S.E.2d 423, 432 (2003). Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

N.C. Gen. Stat. § 1A-1, Rule 56(f). "But Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Loftin v. QA Invs., LLC*, 2018 NCBC LEXIS 11, at *21 (N.C. Super. Ct. Feb. 1, 2018) (quotation marks omitted). Moreover, "Rule 56(f) requires an *affidavit* by the opposing party stating the reasons why they were unable to present the necessary opposing material[.]" *Folmar v. Kesiah*, 235 N.C. App. 20, 30, 760 S.E.2d 365, 371 (2014) (emphasis added). As stated by our Supreme Court:

> Nothing in our State Constitution nor in our decisions precludes summary judgment in favor of a party with the burden of persuasion when the opposing party has failed to respond to the motion in the manner required by Rule 56(e) or (f) and no genuine issue as to any material fact arises out of movant's own evidence or the situation itself challenges credibility. Under these circumstances Rule 56(e) provides that summary judgment *shall be entered*.

*Kidd*, 289 N.C. at 369–70, 222 S.E.2d at 410 (quotation marks omitted); *see also Woods v. Mangum*, 200 N.C. App. 1, 8, 682 S.E.2d 435, 440 (2009) ("[S]ummary judgment may be granted for a party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate."), *aff'd*, 363 N.C. 827, 689 S.E.2d 858 (2010).

38. Here, Plaintiff filed the Motion approximately five months after it filed its Complaint. In support of the Motion, Plaintiff relied upon the pleadings and exhibits attached thereto, Defendants' responses to interrogatories, and the affidavit of Plaintiff's member-manager and exhibits attached thereto. (Pl.'s Mot. Partial Summ. J. 1.) Plaintiff met its burden to show that no genuine issue of material fact as to Defendants' liability exists and that Plaintiff is entitled to judgment as a matter of law on the issue of liability. As a result, the burden shifted to Defendants to come forward with specific facts showing that there is a genuine issue for trial. In opposition to Plaintiff's Motion, Defendants introduced the affidavit of CSL's former president and InfiLaw's current general counsel and exhibits attached thereto, as well as outstanding interrogatories and requests for production served on Plaintiff. Defendants' affidavit is insufficient to create a genuine issue of material fact as to Defendants' liability, and Defendants did not submit an affidavit pursuant to Rule

56(f). Instead, Defendants merely argue that the Court should not grant summary judgment prior to the close of discovery.

39. As Defendants have failed to come forward with sufficient evidence to create a genuine issue of material fact as required by Rule 56(e), failed to point to any specific grounds for impeachment of Plaintiff's affiant, and failed to properly invoke the protections set forth in Rule 56(f), the Court concludes that partial summary judgment against Defendants on the issue of Defendants' liability is appropriate, notwithstanding that the discovery period has not yet expired. *See Estate of Rivas v. Fred Smith Constr., Inc.*, 812 S.E.2d 867, 871 (N.C. Ct. App. 2018) (stating that while motions for summary judgment generally should not be decided until all parties are prepared to present their contentions on all issues raised, "the trial court's decision to grant or deny summary judgment before the completion of discovery will only be reversed upon a showing of a manifest abuse of discretion"); *Charlotte-Mecklenburg Hosp. Auth. v. Talford*, 366 N.C. 43, 52, 727 S.E.2d 866, 872 (2012) (affirming trial court's grant of plaintiff's motion for summary judgment—which was filed three and one-half months after plaintiff filed its complaint—when defendant failed to demonstrate that there was a genuine issue of material fact, failed to offer any specific grounds for impeachment of plaintiff's affiants, and did not avail himself of Rule 56(f)); *Gillis v. Whitley's Discount Auto Sales, Inc.*, 70 N.C. App. 270, 275, 319 S.E.2d 661, 664 (1984) (concluding that the trial court properly granted plaintiff's motion for partial summary judgment when defendant neither filed affidavits or other materials pursuant to Rule 56(e) showing a genuine issue for trial nor an affidavit pursuant to

Rule 56(f) to enable the trial court to refuse the motion for summary judgment or order a continuance). *But see Ussery v. Taylor*, 156 N.C. App. 684, 686, 577 S.E.2d 159, 161 (2003) (reversing trial court's grant of defendants' motion for summary judgment when plaintiff's motion to compel discovery was pending and there was no evidence to suggest that plaintiff was dilatory or that the outstanding discovery could not have led to the discovery of relevant evidence).

40.     The Court further concludes that partial summary judgment is appropriate because Defendants have failed to show how outstanding discovery would create a genuine issue of material fact as to Defendants' liability. *See Ripellino v. N.C. Sch. Bds. Ass'n, Inc.*, 158 N.C. App. 423, 426, 581 S.E.2d 88, 91 (2003) ("To prevail on a Rule 56(f) motion, the moving party has the burden of showing why additional discovery is necessary and how that discovery will create a genuine issue of material fact."), *rev'd on other grounds*, 176 N.C. App. 443, 627 S.E.2d 225 (2006), *rev'd in part on other grounds*, 361 N.C. 214, 639 S.E.2d 441 (2007).  During the hearing on the Motion, Defendants argued that outstanding third-party discovery requests served on Hines were relevant to their frustration of purpose defense, specifically the issue of whether CSL losing its state license was foreseeable.  The Court need not and does not reach the issue of foreseeability, however, because, as discussed above, the Court concludes that Defendants have failed to show the first two requirements of the frustration of purpose defense—that there was an implied condition in the Lease that CSL's inability to operate a law school would excuse performance and that CSL's inability to do so destroyed the value of performance under the Lease.  Further,

Defendants' outstanding discovery requests to Plaintiff mostly pertain to the issue of damages, rather than Defendants' liability. *See Birmingham v. H&H Home Consultants & Designs, Inc.*, 189 N.C. App. 435, 441–42, 658 S.E.2d 513, 518 (2008) (affirming trial court's grant of defendants' motion for summary judgment before the close of discovery when plaintiff did not submit any evidence to show that discovery from newly added third-party defendants was relevant to the basis on which the court granted summary judgment in favor of defendants); *Cullen*, 161 N.C. App. at 582, 589 S.E.2d at 432 (concluding that the trial court did not err in granting plaintiff's motion for summary judgment despite defendant's Rule 56(f) affidavit because the discovery sought by defendant did not bear on the questions at issue); *Loftin*, 2018 NCBC LEXIS 11, at *27 (denying plaintiff's request for a Rule 56(f) continuance when plaintiff failed to demonstrate how the requested discovery would create an issue of material fact regarding causation or damages, the basis on which defendants moved for summary judgment); G. Gray Wilson, *North Carolina Civil Procedure* § 56-7 (3d ed. 2007) ("The moving party should not be permitted to ambush his opponent with summary judgment before he can discover the facts necessary to oppose the motion, *any more than the nonmovant should be allowed to delay an inevitable judgment by pursuing discovery that is immaterial or fanciful.*" (emphasis added)). Defendants' mere contention that the information sought from Plaintiff or third parties "may lead to discovery of facts that would support additional defenses to Plaintiff's claims" is insufficient to justify a continuance. *See Loftin*, 2018 NCBC LEXIS 11, at *27–28

("The Court should not allow a continuance based on mere speculation that the discovery might lead to relevant facts . . . .").

41. Therefore, Defendants' alternative request to hold the Motion in abeyance until the close of discovery is denied.

## V. CONCLUSION

42. For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion as follows:

    A. The Court **GRANTS** Plaintiff's Motion and enters summary judgment against CSL on the issue of CSL's liability on Plaintiff's claim for breach of the Lease.

    B. The Court **GRANTS** Plaintiff's Motion and enters summary judgment against InfiLaw on the issue of InfiLaw's liability on Plaintiff's claim for breach of the Guaranty.

**SO ORDERED**, this the 10th day of August, 2018.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases